GRUBSTAKE INV. ASS'N et al. v. COYLE et al. (No. 7298.)*

(Court of Civil Appeals of Texas. San Antonio. Feb. 18, 1925. Rehearing Denied March 11, 1925.)

1. Contracts ⚖➡176(1)—Construction of plain, unambiguous contract is for court, not for jury.

Construction of plain, unambiguous contract is for court, not for jury.

2. Mines and minerals ⚖➡73—Oil lease construed most strongly against lessee.

An oil lease is construed most strongly against lessee for lessee is contracting only for the right to bore for minerals beneath surface of earth.

3. Mines and minerals ⚖➡73 — Oil lessee of right acquires mere use and easement of surface for purpose of mineral rights.

An oil lessee acquires no title to the surface or any other right, except a mere use and easement of the surface for purpose of the mineral rights alone.

4. Mines and minerals ⚖➡73—Where oil lease conferred right to use premises for mineral purposes only, lessor could use surface in manner not interfering with lessee's right.

Under an oil lease giving lessee right to use premises for mineral purposes only and reserving to lessor use of the land for other purposes, the lessor could use the surface in a manner not interfering with the lessee's leased right.

5. Mines and minerals ⚖➡81—Whether occupancy by others interfered with lessee's right to bore for minerals held question of fact.

Whether occupancy by others interfered with lessee's right to bore for minerals held question of fact.

6. Appeal and error ⚖➡218(2)—Appellant held not entitled to complain on appeal of submission of special issue not objected to at trial.

Appellant held not entitled to complain on appeal of submission of special issue not objected to at trial.

7. Appeal and error ⚖➡1062(4)—Submission to jury of special issue, which court should have decided as matter of law, held harmless, in view of jury's correct answer.

Submission to jury of special issue, which court should have decided as matter of law, held harmless, in view of jury's correct answer.

Appeal from District Court, McMullen County; T. M. Cox, Judge.

Action by the Grubstake Investment Association and others against A. J. Coyle and others. Judgment in favor of defendants, and plaintiffs appeal. Affirmed.

Frank Burmeister, of Jourdanton, and Henry C. King, Jr., J. W. Gaines, C. K.

Quin, J. A. Harley, and C. M. Gaines, all of San Antonio, for appellants.

A. F. Cox and R. L. Cox, both of George West, and White, Wilcox, Graves & Taylor, of Austin, for appellees.

COBBS, J. This suit was brought by appellants against appellees for title, and for the possession of a 20-acre tract of leased land which was leased to appellants to bore for oil or gas or other minerals, and to enjoin appellees from occupying or trespassing in and upon said premises, alleging that appellees had, without the knowledge or consent of appellants, erected thereon certain machinery, boilers, houses, and other equipment, and were interfering with appellants' use of said premises.

The defense of appellees was that they were operating an oil well under a permit from the state of Texas, authorizing them to drill and produce oil and gas from the bed of the Frio river, adjacent to and bounding the property described in appellants' petition, and that they had drilled a well in said river from which they were producing oil, and have and do own a lease or agreement from H. B. Glass and others, the owners in fee of a 20-acre tract of land adjacent to the portion of the Frio river covered by said permit, and adjacent to said well in which they have drilled in said river, which lease authorizes defendants to use the surface of said 20 acres for the purpose of erecting thereon a boiler, tanks, and other equipment necessary in the drilling and operating the oil well in the Frio river. And appellees alleged that they have situated, in a corner of said 20-acre tract, within a few feet of the boundary line of an adjoining tract of land, a small toolhouse, a boiler, small tanks, and a tent, and that the use by appellees of the small portion of said 20 acres in the operation of said well will not inconvenience appellants or intervener, and offered, if at any time it be found to inconvenience appellants, to permit them a joint use thereof or remove the improvements from the land.

The case was tried with a jury whose verdict was for appellees, and the judgment of the court was in accordance therewith.

There is no pleading or evidence herein to show that the Frio river is 30 varas wide, or what is known to be a navigable stream under the Texas statutes; were it so, no such permit could be granted by the state of Texas to allow the pollution of the stream of water. Black Bros. v. State (Tex. Civ. App.) 253 S. W. 576. But no question is raised on that point and it was agreed that no question of title would be urged here.

The appellants present the entire question in their brief as follows:

"The question, and the only question involved in the case, was the right of appellees to use

a small portion of the 20-acre Glass tract adjacent to the river for the operation of a boiler, small storage tanks, and other equipment. It was the contention of appellants that, under the terms of the lease from John Stitz to Blocker, the mineral lessee of the tract described in said lease, and which included the 20-acre Glass tract, had the exclusive right to the use of the surface of said premises; whereas appellees contended that they had the right (assuming the Stitz lease to be still in effect as to the 20 acres), with the consent of the owners of the fee, to use that portion of the surface of the 20-acre tract occupied by them, as long as they did not hinder or interfere with the use of the said premises by the oil lessee in the drilling and development thereof by said lessee for oil and gas."

The court, without objection, submitted to the jury, for the jury to answer, in special issue No. 1:

"Do the owners of the oil, gas, and minerals under the lease agreement and contract from John Stitz to V. H. Blocker, dated the 20th of March, 1919, conveying 934.8 acres less 50 acres sold off the west side, of a certain league and labor granted by the state of Texas to Michael Hely and James Garner, have the exclusive right to lay pipe lines, build tanks and other structures on the whole of said tract, including the 20 acres known as the Glass tract, to the exclusion of any one else? Answer 'yes' or 'no.'"

To which the jury answered, "No."

[1] The first proposition of appellants is that, where a contract is plain and unambiguous, it is for the court and not for the jury to construe. Surely that is the law.

The court also submitted issue No. 2 as follows:

"Does the occupancy of that portion of the said 20-acre Glass tract by the defendants interfere with the reasonable use of such portion of said 20-acre tract by the plaintiffs and intervener for the development of their oil and mineral lease? Answer 'yes' or 'no.'"

The jury answered, "No."

The sole question in this case was as to the "exclusive right of appellants to the use and occupancy of the land for laying pipe lines, building tanks, and other structures" as against the use of the surface by appellee, which in no way interferes with the appellants' use. The lease contract expressly gave appellants the right to use the premises for mineral purposes only, and the right to use it for other purposes was reserved to the lessor.

[2-4] In the construction of an oil lease contract such as this, it must be construed most strongly against the lessee, for he is contracting only for the right to bore for minerals beneath the surface of the earth. He acquires no title to the surface, or any other right, except for that sole purpose; that is, a use and easement of the surface. Since that is the case, in a controversy such as this, the lessor retains and has parted with no surface rights to the use of the land for any purposes, save the mineral rights, and what incidentally and contractually goes with that right. The contract gives "the right of ingress and egress at all times for the purpose of drilling and mining and operating for oil and gas and other minerals, and he shall have the exclusive right to drill well, lay pipe lines, build tanks, and other structures." These rights are secure and prior to any right of appellees. The contract further provides in this connection in paragraph 8 that "the lessors are to fully use and control the said premises, *except such parts as shall be necessary for drilling and mining or other purposes necessary to the operation of the said property*" (italics ours) by appellants.

Bear in mind there is no evidence to show that appellees are usurping or are intending to usurp or infringe upon any right of appellants. They are boring no well upon appellants' leased land; they only have their machinery upon the surface of the leased land, with their oil well elsewhere, and appellees say they are willing to move it therefrom whenever appellants indicate a purpose to use the space to bore for oil or gas, or, in the alternative, are willing for appellants to use their machinery in case they bore a well thereabout.

[5] It was a question of fact as to whether the occupancy by appellees of the small part of the 20-acre lease did interfere with the reasonable use in the development of appellants' oil and mineral use under the surface. The contract reserved to the lessor "to fully use and control the premises, except such parts as shall be necessary for drilling and mining or other purposes necessary to the operation of the said property" of appellants. As long as there was no testimony to show that appellants were to use this particular property, its mineral rights were not interfered with, and the jury properly found that they were not.

[6] By failing to object to that portion of the court's charge wherein the construction of the contract was submitted to the jury, appellants must be held to have waived their right to complain of such submission. Such is the settled law. There is no ambiguity in the contract affecting appellants' right to bore for minerals; besides the lessor retained the right to the surface so long as it did not interfere with appellants' use. But as to whether the use made by appellees did interfere with the full and free enjoyment of appellants' rights was clearly a question of fact, for appellants may have desired to bore a well precisely at the very place occupied by appellees, or they may not. In the one case it would affect appellants' rights, while in the other it would not do so. There was no question submitted to the jury as to

whether there was or not an exclusive right to appellants to the use of the land for all purposes; for under the contract there was no ambiguity, for the rights were clearly defined by the contract.

[7] The exclusive right was only to develop for minerals and not otherwise. The right was limited and subordinated to the estate of the grantor and his use thereof, excluding mineral rights. Appellants had the exclusive use of the land for oil or gas purposes and no further. While the issue was submitted to the jury that appellants complain was not ambiguous, and should have been construed by the court as a matter of law, yet it is perfectly harmless, since their construction was correct and could bear no other construction. But the other issue of use involved a question of fact, and their finding is clearly shown to be and was undisputed, as shown by the pleading of both parties, as well as by the evidence.

The appellants have the exclusive mineral rights to bore for oil or gas and every incidental right adjacent and appurtenant thereto. The grantor reserved to himself all other rights and uses to the land. Appellees are using a part thereof for placing the machinery, but by their pleading acknowledge the appellants' rights, and are admittedly holding in subordination thereto.

The jury finds, and the facts show, no present intention on the part of appellants to use it, and that appellees' use of the little part is in subordination to appellants' use, so all other rulings of the court on the questions presented by appellants in the assignments and propositions are entirely harmless.

This case has been fairly tried, and justice is administered, and, no reversible error being shown, the judgment of the trial court is affirmed.