**COZART et al. v. CRENSHAW.　(No. 11895.)**

Court of Civil Appeals of Texas.　Fort Worth.
July 16, 1927.

**1. Injunction ⊜121—Petition for injunction may be amended under general rules of amendments to pleadings (Rev. St. 1925, art. 2001).**

Petition for injunction may be amended under general rules of amendments to pleading prescribed by Rev. St. 1925, art. 2001.

**2. Injunction ⊜114(4), 121—Pleading ⊜248 (16)—New parties and allegations necessary to give court jurisdiction or correct statement of damages or change capacity of plaintiff or add causes of action may be pleaded in amendment to petition for injunction.**

Amendment to petition for injunction may introduce new parties plaintiff or defendants and may supply allegation necessary to give court jurisdiction, or correct statement of damages, or change capacity in which plaintiff sues, or add cause of action accruing after first suit was filed.

**3. Appeal and error ⊜1041(2)—Amendment to petition to enjoin construction of oil refinery, alleging increase in fire hazard, held harmless where it was not basis of overruling motion to dissolve injunction.**

Where petition to enjoin construction of oil refinery on lands leased for oil wells did not allege that maintenance of refinery would increase fire hazard, amendment to petition so alleging was harmless, where court did not overrule motion to dissolve injunction on ground of increase in fire hazard.

**4. Mines and minerals ⊜52—Finding that construction of oil refinery by lessee of surface interfered with and obstructed drilling of oil and gas wells by lessee for oil and gas purposes held sustained by evidence.**

In suit by lessee of lands for oil and gas purposes to restrain lessee of part of surface from constructing oil refinery on lands and obstructing access to lands on ground that refinery interfered with drilling oil and gas wells, evidence sustained findings that construction of refinery interfered with drilling and obstructed plaintiff's access to land.

**5. Mines and minerals ⊜78(1)—Lessee under oil and gas lease in exercising right of ingress and egress was not required to rely on uncertainty of securing easement over land or passway left by lessees of surface.**

Lessee of land for oil and gas purposes in exercising right of free ingress and egress to and from land, of space for storing oil, constructing pipe lines, and carrying away oil and gas was not required to rely on uncertainty of securing right of easement over lands belonging to others or over passway left by lessee of surface between two of their buildings.

**6. Mines and minerals ⊜78(1)—Lessee under oil and gas lease could use surface in manner necessary for drilling, removing, or storing oil and gas.**

Lessee of land for oil and gas purposes *held* entitled to use surface of land in any way necessary for drilling oil or gas wells or for removing and storing oil or gas.

**7. Mines and minerals ⊜52—Rights of lessee in leased territory may be protected by injunction.**

Injunction lies to protect right of lessee in leased territory.

**8. Quieting title ⊜7(2)—Lessee in possession may have leases by lessor to others declared cloud on his title.**

Lessee in possession may maintain suit in equity against persons claiming under leases from lessor to others and may have their leases declared cloud on his title.

**9. Mines and minerals ⊜81—Whether lessee's right to drill for oil or gas is interfered with by another's occupancy is question of fact for trial court.**

Whether occupancy by others interferes with lessee's right to drill or bore for oil or gas or other minerals is generally question of fact to be decided by trial court.

─────────────────────────────

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**10. Mines and minerals ⬅78(1)—Lessee under oil and gas lease having right to bore on 'another's land may build road onto such land.**

Lessee of oil and gas lease having right to go on another's land to bore for oil and gas with usual necessary and convenient rights connected therewith has right when reasonably necessary for his use to build road onto land.

**11. Mines and minerals ⬅52—Petition by oil and gas lessee to restrain lessee of surface from common lessor from constructing oil refinery, alleging interference with drilling and access to land, stated grounds for injunction.**

Petition by lessee of land for oil and gas purposes to restrain lessee of surface from common lessor, from constructing oil refinery on land, alleging that construction of oil refinery would create fire hazard, interfere with drilling, and obstruct ingress and egress from land, sufficiently alleged grounds for injunction.

**12. Mines and minerals ⬅81—Lessor leasing land to plaintiff under oil and gas lease could not confer on others right to infringe on plaintiff's rights.**

Where lessor leased lands to plaintiff under oil and gas lease, lessor could not confer on another any right to infringe on rights of plaintiff.

**13. Mines and minerals ⬅52—Common lessor held not necessary party in petition by lessee of oil and gas to restrain lessee of surface from constructing oil refinery on land.**

In petition by lessee of land for oil and gas purposes to restrain lessee of surface from constructing oil refinery and interfering with drilling, common lessor was not necessary party and petition was not bad for failure to make lessor party.

Appeal from District Court, Cooke County; Alvin C. Owsley, Judge.

Suit by H. E. Crenshaw against G. O. Cozart and another, in which defendants filed a cross-action. Judgment for plaintiff, and defendants appeal. Affirmed.

Kenley, Dawson & Holliday, of Wichita Falls, for appellants.

James R. Wiley, of St. Joseph, and Adams & Jones, of Gainesville, for appellee.

BUCK, J. H. E. Crenshaw filed suit for injunctive relief, to restrain G. O. Cozart and the Swastika Refinery from erecting on a designated lot and plat of ground of 4.56 acres in the town of Muenster, Cooke county, an oil refinery or skimming plant, and from interfering with plaintiff's right as lessee of an oil and gas lease from Nick Stoffels and wife. He alleged: That he had leased the plat of ground from the Stoffels for oil and gas purposes, and had had his lease put of record prior to the time that the defendants attempted to place buildings thereon and interfere with his right of peaceable possession and with his drilling purposes. That defendants without plaintiff's knowledge or consent commenced to erect buildings of a permanent nature on the land under lease. That such

buildings, when so erected, would deprive plaintiff of his right under the lease from the Stoffels, and would render plaintiff's lease useless for the purpose for which the same was secured. And that the operation of the refinery or skimming plant on any part of the land would create a fire hazard, and would prohibit plaintiff from drilling an oil or gas well on any part of such lease.

Plaintiff further alleged that in the Muenster field considerable gas is encountered in the drilling of oil wells, and, due to this fact, it would be dangerous for plaintiff to drill wells on said lease if the refinery should be maintained and operated on said land. Plaintiff further alleged that if the defendants should be allowed to construct such refinery, the amount of plaintiff's acreage would be reduced and the number of wells plaintiff would be able to drill on said land would likewise be reduced. Plaintiff further alleged: That in the Muenster field there are two distinct oil sands; one sand is found at the depth of about 1,200 feet, while the other is found at the depth of some 1,600 feet. That both sands show oil and gas in paying quantities. That it would be necessary for him to drill wells to both of said sands, in order to get the oil and gas therefrom. And that thereby it would be required that more wells should be drilled than if he were drilling to one sand, inasmuch as separate wells would have to be drilled to the different sands.

He further alleged, in his amended petition: That the railroad ran along the northeast side of the plant, and that a street or public road ran along the north boundary line. That defendants, if they should not be restrained, would deprive plaintiff of the right of ingress and egress to his lease, and also would interfere with the use of the railroad facilities for shipping purposes. That owing to the peculiar, irregular, and odd shape of the said leased premises, plaintiff's most practicable and only convenient entry onto said premises is from the north, and by reason of the lease executed to plaintiff on said land, its proximity to said highway on the north and said railroad right of way with track privileges, plaintiff acquired a valuable right to the entrance of his property from said highway and the convenience and use of trackage privileges on the railroad in handling all his supplies, drilling rigs, machinery, and equipment. That defendants, in appropriating to their use a strip of land across the north end and along the east and north side of plaintiff's said lease, which is that part of the lease adjacent to said highway and railroad right of way, have deprived plaintiff of the use of the north part of the lease and the means of ingress and egress to said lease without the inconvenience and hazard of passing over, through, and across

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

property, buildings, pipes, and other improvements erected and sought to be placed thereon by defendants, all of which constitute an irreparable injury to plaintiff.

Plaintiff further alleged: That said leased premises constituted a semiproved area for the production of oil and gas, and is situated about 1,000 feet from a producing oil and gas well, in the Muenster Town-Site Pool, and that in said Muenster Town-Site field there exists a number of oil wells in different stages of operation. That in the production of oil from said wells, there is a great amount of gas in said wells, and it is a fact that wells drilled in the southeast direction from the discovery well are heavy gas producers, and that as the structure rises, still heavier gas producers may be reasonably expected, and because of the nature of the gas production, the operation in this field is extremely hazardous, even though every known precaution be exercised. That, further, because of the topography of the country and of the changing atmospheric conditions, it is incumbent upon plaintiff within this particular area to use every precaution in order to protect the property rights of operators, the town of Muenster, as well as the lives of employees and laborers engaged in their employment, both by day and by night. That the building and operation of the said oil refinery upon the location mentioned would greatly·increase the fire hazard on plaintiff's said lease, because in the nature of the refining business, the refinery must have adequate storage for its crude as well as for its refined products, both of which are exposed and highly inflammable, and in order to reduce their crude in the process of refining, they must and will use fires under their boilers and pots, which will be a permanent and continuous menace to the plaintiff in his drilling of oil and gas wells on his leased premises, as well as to other operators in that area. Plaintiff further alleged that he intended to drill and develop said leased premises and was prevented from doing so because of defendants' acts. He further pleaded damages in the sum of $10.000 and prayed for an injunction restraining defendants from erecting and maintaining the buildings on said leased premises.

The defendants filed their answer and cross-action, consisting of a number of exceptions to plaintiff's original petition, and further pleaded: That they had leased a narrow strip of land along the north side of the leased premises, extending from the northwest corner of the same east a distance of 313 feet to a point at the intersection of the north line of the railroad right of way, thence down the right of way approximately 200 feet to the gin lot, said narrow strip.being 50 feet in width except for a distance of 40 feet near the middle of said strip where it is 70 feet in width. That said lease from the Stoffels was of the surface only, and for the purpose of erecting thereon a small skimming plant for refining crude oil. That defendants had, before plaintiff's petition was filed, made excavations and laid a concrete foundation for their said plant. That said plant would be located about midway of said strip and about 10 feet from the north property line of plaintiff's said lease, and would occupy a spot of ground 9 feet north and south, and 26 feet east and west. That it would be constructed wholly of brick and concrete and metal and that no combustible or inflammable materials would be used in the construction of the same, and that the only fires used in operating said plant would be underneath the boilers or stills and down in furnaces, most of which would be underneath the ground. That said furnaces would be practicable in that said fires would not be exposed in any way, except by the furnace doors, which would be located on the north side thereof and in about 10 feet of the north property line. ·That said fires would be fuel oil fires, and would be operated with a single valve or cut-off so that fires could be extinguished instantly.

Defendants further alleged: That the north part of plaintiff's lease in the vicinity of defendants' said refinery, while irregular in shape, is nevertheless more than 300 feet· in width east and west, and 500 feet in length north and south, and because thereof these defendants say that, under rule 37, promulgated and enforced by the Railroad Commission of Texas for the conservation of oil and gas, which provided that no well for oil or gas should be drilled nearer than 300 feet to any other completed or drilled well on the same or adjoining tract of land, and no well shall be drilled nearer than 150 feet to any property line, plaintiff would have to make a location for a well on the north part ·of his lease at least 150 feet from the north line. That said location, if made, would be 130 feet from the fires of defendants' refinery, which distance would be greater than the distance from said location to the fire which plaintiff would have to have under his boiler for drilling purposes, unless he located said boiler at a much greater distance from the well than is usual and customary. If ·necessary to state any further pleadings of plaintiff and defendants, we will do so in the course of our opinion.

Upon presentation of the original petition for injunction to the district judge, the judge in chambers, on May 14, 1927, granted the petition as prayed for.· Upon the filing of the original answer and cross-action of defendants, including a motion to dissolve the temporary injunction granted, the plaintiff filed his first amended petition. The court overruled defendants' motion to dissolve, and defendants have appealed.

## Opinion.

Defendants below objected to the filing of the amended petition, after answer filed by

the defendants and their motion to dissolve, and alleged that said amended petition sets out entirely new grounds for said injunction not disclosed by his original petition, and is a distinct departure therefrom, without any excuse being shown therefor, it not appearing therefrom that any of the new facts alleged or theories advanced for injunctive relief were not known and available to the plaintiff at the time of the filing of his original petition. Defendants moved that said petition be not allowed to be filed and considered prior to the ruling by the court on defendants' motion to dissolve had been made.

[1] Practically all of the additional allegations made in the amended petition were in response to objections and exceptions filed by defendants. We see no reason why a petition for injunction may not be amended under the general rules of amendments to pleadings, and have found no statute or holding prohibiting such amendment. Article 2001, Rev. Statutes of 1925, under the heading of "Amendments," is as follows:

"Parties may amend their pleadings, file suggestions of death and make representative parties, make new parties, and file such other pleas as they may desire:

"1. In vacation, by filing such pleas with the clerk of the court in which the suit is pending.

"2. When court is in session, under leave of the court upon such terms as the court may prescribe before the parties announce ready for trial, and at such time as not to operate as a surprise to the opposite party.

"3. When because of the insufficiency of the pleadings of the successful party, the judgment has been arrested or a new trial granted."

Where a petition for mandamus to compel the Commissioner of the General Land Office to issue a patent for land was denied because the adverse claimant was not a party, the relator was held to have the right to amend his petition and file a new motion. Chappell v. Rogan, 94 Tex. 492, 62 S. W. 539.

Pleadings may be amended in a suit by attachment for the purpose of correcting and making certain the original allegations as to the means by which plaintiffs acquired the claim sued on. Sweetzer v. Claflin, 82 Tex. 513, 17 S. W. 769; Pearce v. Bell, 21 Tex. 688; Tarkinton v. Broussard, 51 Tex. 550. Where a demurrer to a petition for injunction has been sustained, the plaintiff has a right to amend as in other cases. McDonald v. Tinnon, 20 Tex. 245.

[2, 3] The record does not disclose that in the instant case any of the exceptions contained in defendants' original answer were sustained by the court, but, as before stated, any new allegations in the amended petition were in response to the exceptions of the defendants, and to remove defects, if any. An amendment to a petition for injunction may introduce new parties plaintiff or defendants, may supply an allegation necessary to give the court jurisdiction, or correct statement of damages, or change the capacity in which the plaintiff sues, or add a cause of action accruing after the first suit was filed. Foster v. Wright, 217 S. W. 1090, by this court, opinion by the writer. Mid-Tex. Petroleum Co. v. Colcord (Tex. Civ. App.) 235 S. W. 710. While in the original petition plaintiff did not allege that the maintenance of the refinery on the north part of his lease would increase the fire hazard, and did so allege in his amended petition, yet the court in his findings of fact did not predicate his overruling of the motion to dissolve upon the increase in the fire hazard, and we think the inclusion in this allegation in his amended petition becomes harmless, at least, in view of the judgment rendered by the court and the reasons given therefor.

The court filed his findings of fact and conclusions of law, which are, in part, as follows:

"(2) The lease is the regular producers' 88 special form B, and was fairly entered into by all parties thereto.

"(3) As shown by the field notes and plat of said block of land, it fronted 212 feet on the railroad right of way and 213 feet on a public highway, which frontage furnished the only practical ingress and egress to and from said block of land, necessary for the use of the plaintiff in the development of the oil and minerals therein, as contemplated in the lease, and on account of the small size and peculiar shape of the tract of land, such frontage constituted valuable incident to said lease, and a material inducement to the plaintiff to accept the same.

"(4) The plaintiff paid his lessors the consideration named in said lease and at once began preparations, in good faith, to bore a well thereon and comply with his obligations under said lease, and continued until he was interfered with and prevented by the acts of the defendants in placing structures and materials upon said leased premises.

"(5) The plaintiff selected as site for the first well a point 150 feet south of the north line and 150 feet east of the west line of said block, in an honest endeavor to comply with the rules of the Railroad Commission and promote the best interests of his lessors and himself.

"(6) On the 25th day of May, 1927, for the purpose of constructing and maintaining thereon a refinery, the defendants procured from said Nick Stoffels and wife a ground lease of the strips of land described therein, which included and covered the entire frontage of said block of land, both on the railroad and highway.

"(7) It is provided in said ground lease that the defendants may renew the same from year to year by the payment of $100, and the defendants well knew at the time they obtained the said ground lease the refinery could not be constructed and maintained on the strip of land covered thereby without seriously interfering with and impeding the plaintiff in the development of the oil and gas on said tract of land, and the defendants in obtaining said lease sought an undue advantage of both their lessors and the plaintiff.

"(8) The defendants began preparations to place material and structures on said land when the plaintiff applied for and obtained the tem-

porary injunction issued in this cause, which was executed by service on the defendants on Saturday, the —— day of May, 1927, but on the next day, which was Sunday, hurriedly constructed an oil tank near the northwest corner of said block of land, and another, with the foundation of two others, so near the site selected by plaintiff for boring his first well as to prevent plaintiff from carrying on his work, and constructed concrete foundations, and placed material on said land in such manner as to completely cut off the plaintiff's access to said land, so that he was compelled to unload a lot of material for his derrick and machinery on the highway. It was explained by Mr. Cozart that the men who placed the material and structures on said lease on Sunday were employed by the defendants before the injunction was served, and that he did not know of their work until afterwards, but unnecessary haste was shown in so placing said structures and materials as to keep the plaintiff off the premises leased by him.

"(9) If the refinery, with its necessary tanks and equipment should be completed, it will leave one opening about 20 feet wide as the only means of access of the plaintiff to his leased premises, and that will be under the control of the defendants, and the refinery cannot be maintained on said lease, as contemplated by defendants, without serious and continuous damage to the plaintiff, for which he could have no adequate remedy at law.

"(10) The plaintiff cannot proceed with the work of boring the well at the site selected by him, or get his machinery properly placed for said work, until the structures and machinery placed by the defendants after the injunction was served, have been removed.

"(11) The plaintiff and his lessor, Stoffels, were under mutual obligations to each other. The plaintiff under the lease acquired the right to use the land for all purposes necessary for the development of the oil thereon, with due regard for the rights of the lessor to make such use of the land as would not interfere with the plaintiff. The lessor could not confer upon the defendants any right to infringe upon the rights of the plaintiff, and as the refinery cannot be constructed and maintained as contemplated by the defendants without inflicting serious and continuous damage to the plaintiff, for which he could have no adequate remedy at law, the motion to dissolve the injunction should be overruled."

[4] We think the evidence sustains the findings of the court.

J. T. Lobban, a witness for plaintiff, testified that he had been a driller of oil and gas wells for some 15 years; that he had been operating rotary rigs, which the plaintiff testified he had been intending to use, for the last 13 years, and was familiar with the operation thereof, and with the construction and placing of the machinery on the ground for the purpose of drilling walls; that the size of the derrick to be used in drilling to sixteen or eighteen hundred feet in depth, would be about 96 feet in height, and 22 feet square at the base; that the machinery used consisted of a boiler, toolhouse, drill pipe, and engine; that a slush pit for the purpose of catching the slush must be constructed from 15 to 18 feet in width and some 45 feet long; that a slush pit is made by digging into the ground and taking out the dirt and making an embankment around it; that as a general rule, it is about 12 feet from the edge of the derrick to the edge of the slush pit; and that if the slush pit was constructed so as to extend from the base of the derrick, it would require some 45 to 60 feet more for the slush pit; that a pump handles the mud and forces it into the slush pit, and that the pump is usually on the floor of the derrick, but sometimes is placed on the ground; that the boiler is placed on the opposite side of the derrick from the slush pit, some 60 to 80 feet from the base of the derrick.

Plaintiff testified that he intended to drill, and was preparing to drill at the time defendants went on said land, a well 150 feet south of the north line. Lobban testified that from his experience as a driller it is necessary to have exclusive control of the land from 80 to 100 feet from the derrick; that it was not practicable to try to produce from more than one sand through the same hole; that he had drilled wells to two different sands, called twin wells, from 25 to 75 feet apart; that the iron tanks, from 250 to 500 barrels capacity, are generally set from 20 to 60 feet from the boiler, the boiler, as before stated, being from 60 to 80 feet from the derrick. He testified, further, that in drilling a well it is necessary for one of the operators or laborers to spend a great deal of his time high up on the derrick, and that if drilling into a gas sand and the gas is escaping and a fire should occur within 100 or 300 feet, and the atmospheric conditions were favorable to hold the gas down, it would endanger the operator's property and the life of the man in the derrick; that in drilling oil wells one must have some space and freedom, in coming into a well and going out, coming in with casing or a truck. When one gets ready to begin drilling, he brings in his drill stem, and that is all stacked out, and as he begins to drill he reaches out and gets a joint and that is swung in and connected up, and then he gets another, but in the beginning he must have space to have all that pipe stacked out, and a reasonable space to pass around it. In coming in with teams and trucks, hauling in equipment, it is necessary to have open space where one can turn around and go back and forth, and that in his judgment it was necessary to have jurisdiction over a strip of ground from 80 to 100 feet around the derrick.

As to the interference with free ingress and egress to the land, plaintiff testified:

"In acquiring this lease I took into consideration the location of the highway and the railway and the convenience that might be attached to them by reason of their location;

that was a very favorable part of my purchase. I figured it was easy to get into from the railroad, both to haul anything in or ship anything out, and I could enter it from the public highway. The proximity of this lease to the public highway and to the railroad right of way, I considered, was a valuable right and enhanced the value of this lease."

He further testified that the property that joined his lease on the east and up next to the railroad right of way was known as the gin lot, and that he did not own it; that the land located on the west side of the lease is the city park, and that he did not own that; that there was no entrance into the lease that was practicable other than the highway and the railroad right of way, without going over some other people's property.

[5] The evidence further showed that in the construction of the proposed buildings by defendants, which were to be made of brick, sheet iron, etc., the defendants intended to leave a space of some 30 feet. Defendants did not plead, nor did their testimony show, that they would permit plaintiff to go through this passway in order to get on his lease. But if he should be so permitted, we do not think that he would be required to depend on the continued permission to pass through this passway. The defendants were proposing to erect a plant consisting of several buildings and tanks of a more or less permanent nature. The probable cost of these improvements would amount to $8,000 or $12,000. Defendants did not offer to go into an agreement in writing with plaintiff—that he might use such passway, but merely relied upon the fact that plaintiff in his petition did not allege that he could not secure permission from the city, or from the owner of the gin lot, or from the defendants, or the owners of other lands adjoining the leased premises, in order to show his right to a writ of injunction. We do not think, in the exercise of his right of free ingress or egress to and from the land, and space enough to operate, store oil and necessary pipe lines, to carry away the oil and gas, that he was required to rely on the uncertainty of securing the right of easement over lands belonging to other persons, or over the passway left by defendants between two of their buildings. See Thornton on Laws Relating to Oil and Gas (2d Ed.) p. 112, § 74.

[6-10] The lessee, plaintiff below, under his lease from the Stoffels, had the right to use the surface in any way necessary for drilling oil or gas wells, or for removing the oil or gas, or for storage, etc. Morrison's Oil Rights, 424; Thornton on Oil and Gas, p. 145, § 103; Kiser v. McLean, 76 W. Va. 294, 67 S. E. 725, 140 Am. St. Rep. 948, and cases therein cited under notes. An injunction lies to protect the right of lessee in leased territory. A lessee in possession may maintain a suit in equity against persons claiming under leases from the lessor to the other persons, and may have their leases declared a cloud upon his title. Thornton on Oil and Gas, p. 145, § 103, and cases cited in notes thereunder. Whether occupancy by others interferes with lessee's right to drill for oil or gas or other minerals is generally a question of fact, and primarily to be decided by the trial tribunal. Grubstake Inv. Ass'n v. Coyle, 269 S. W. 854, by the San Antonio Court of Civil Appeals; Gregg v. Caldwell-Guadalupe Pick-Up Stations, 286 S. W. 1083, by the Commission of Appeals. The lessee of an oil and gas lease, having the right to go upon another's land to bore for oil and gas with the necessary, usual, and convenient rights connected therewith, has the right, when reasonably necessary for his use, to build a road onto the land. 18 R. C. L. 1207, 1208. See Mid-Texas Petroleum Co. v. Colcord, 235 S. W. 710, opinion by Chief Justice Conner of this court, in which the court said:

"While the grant did not in terms include the surface, it nevertheless carried with it, and attached to all the subsequent assignments thereof, the further right to such part of the surface as was reasonably necessary to secure, develop, and care for the oil and gas produced. Such a right and privilege was necessary to the grant, and without which the grant would be of no value. This is true whether the grant specifically provides for such privileges or not. The rule on the subject is thus stated in 8 R. C. L. § 123, under the title of 'Deeds':

" 'Generally everything is deemed to pass which is necessary to the proper use of the property conveyed.' "

See, also, United North & South Oil Co. v. Mercer, 286 S. W. 652, by the Austin Court of Civil Appeals.

[11, 12] We are of the opinion that the plaintiff's original petition and amended petition sufficiently alleged grounds for an injunction, and that the evidence supports the court's findings that the erection of the buildings and structures on the north part of the leased premises by the defendants, and the maintenance thereof, would unreasonably interfere with plaintiff's use of the premises for the purpose of drilling, etc.; that the lessors, the Stoffels, could not confer on the defendants any right to infringe upon the rights of plaintiff.

[13] We further are of the opinion that the petition is not bad for failure to make the lessors party defendants. Doubtless they were proper parties, but we do not see how they can be deemed necessary parties. Therefore the judgment is affirmed.