ELDON A. PETERSON, APPELLANT, V. JOE VAK ET AL., APPELLEES.

70 N. W. 2d 436

Filed May 20, 1955. No. 33742.

George B. Hastings, John E. Dougherty, and John Brogan, for appellant.

Marvin A. Romig and Halligan & Mullikin, for appellees.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ., and KOKJER, District Judge.

BOSLAUGH, J.

The relief appellant sought by this action was that his leasehold of described land for a term of 3 years commencing with March 1, 1952, be quieted and con-

firmed in him free of adverse claim of appellees; that they be barred from asserting any interest or right in or to the land or the possession thereof adverse to the leasehold of appellant; and that appellees be enjoined from entering or being upon the land and from interfering with, cutting, or harvesting grain then growing or standing on the land. The district court heard the evidence of appellant, sustained a motion of appellees for dismissal, denied a motion of appellant for a new trial, and dismissed the case.

There is evidence of the following matters: Joe Vak, herein identified as appellee, was lessee of the land involved from the year 1918. He entered upon the land by virtue of an oral lease, the term of which was 1 year commencing with March 1. He became and was a tenant from year to year until March 1, 1952. The land involved is 160 acres. Appellee summer tilled 101 acres of it at proper times in the year 1951. The owner of the land on August 29, 1951, served a written notice on appellee terminating his tenancy of the land. The substance of the notice was that the owner of the land notified appellee to quit, vacate, and surrender to the owner the possession of the land on or before March 1, 1952; that the owner claimed the right to enter upon the land during the fall of 1951 to plant it to wheat; and that the notice was given for the purpose of terminating the tenancy of appellee of the land.

The owner of the land entered into a lease of it with appellant. It was reduced to writing, executed by the parties, and delivered September 1, 1951. This lease described the land involved herein and the term of it was 3 years commencing with March 1, 1952. Appellee disregarded the notice given him August 29, 1951, by the owner and on the 25th and 26th of September, 1951, appellee planted to winter wheat part of the land, about 101 acres, that had been summer tilled that year. Appellant knew after the wheat grown on the land in 1951 was harvested that the ground was disked twice

and one-wayed once. He did not discuss with appellee the fact that he was negotiating with the owner of the land for a lease of it until September 1, 1951, the day the written lease was delivered to him. Appellant then negotiated with appellee for immediate possession of the land but was advised by appellee that " 'I am keeping the land, I summer tilled it and I am keeping the land.' " A few days later appellee during another conversation said he was "keeping the summer till" but appellant could have 39 acres of stubble and could plant wheat on it, and that appellant could have the part of the land that had not been summer tilled. Appellant offered to pay appellee for the summer tilling that had been done in the summer of 1951 so that appellant could get possession then but appellee refused to negotiate on this basis and said he had no price for it. Appellant did nothing further about the land until March 1, 1952, on which date he went into possession of it, and about the first of April he plowed 39 acres that had not been plowed before and he broke some lagoon land. Later in the year 1952 appellee claimed the right to reenter the land to harvest the wheat he planted on the land after the notice terminating his tenancy was served by the owner, and he threatened to do so. This resulted in the pending litigation.

It is said by appellees that Joe Vak had possession of the 101 acres of the land which was planted to wheat in the fall of 1951 at the time this case was commenced; that appellant did not then have possession thereof; that the essence and effect of the action of appellant were to obtain possession of the real estate; that appellant had an adequate remedy at law; that the circumstances were such that the ordinary legal remedy available to him was adequate; and that the remedy of injunction could not be successfully invoked by appellant. If the premise of appellees is sustained the conclusion deduced therefrom is indisputable. Stahl v. Allchin, 155 Neb. 412, 52 N. W. 2d 251. However the

record disputes the factual matters upon which the conclusion of appellees in this regard is based. The evidence is that appellant went into possession of the land March 1, 1952, and that he thereafter performed affirmative acts indicative of his occupancy and use of it as tenant. He has not surrendered his claim of rightful possession and use of the land. He was supported in his conduct by a written lease from the owner of it. The tenancy of the land that Joe Vak had was terminated by the owner as of March 1, 1952. There is no claim that what the owner did in this respect was not legally effective to end the tenancy of Joe Vak. There is no claim or proof that James Vak ever had any right to or interest in the land, the occupancy, or the possession of it. The appellee Joe Vak alleged that after the notice to terminate his tenancy was served on him he talked with George Hastings, the agent of the owner of the land, and told him that the worth of the summer tilling done by appellee in 1951 was $1,800; that he would give appellant 10 days within which to pay that amount to him; that if that was not done within the time limited appellee would plant .the summer tilled land to wheat; that he was not paid the amount demanded; that he afterwards planted the wheat; that because thereof appellee was then in legal possession of the premises; and that he "had a right to re-enter and harvest said wheat without committing a trespass on said land." It is a permissible inference from the allegation of appellee that he had a right to reenter· the land and harvest the wheat, that he was not in the possession of it. This supports the proof of appellant that he had taken and had possession of the land. This action was not brought to secure possession of the land by appellant. He had right of possession, possession of, and actual dominion over the land when the suit was brought. It was to quiet and confirm the leasehold of appellant and to enjoin appellees from reentering and trespassing on the land.

A lessee may maintain an action to quiet his title to a leasehold of real estate. Whether he is in or out of possession thereof is not for the purposes of the action important. § 25-21,112, R. R. S. 1943. McDonald v. Early, 15 Neb. 63, 17 N. W. 257, was an action by a holder of a school land lease issued to him by the state to quiet title of his leasehold. A demurrer to the petition was sustained and the action was dismissed. A ground of the demurrer was that only the owner of a legal title to the land was a competent plaintiff in an action to quiet title and that a lease for a term of years was not sufficient. The court considered the statute on the subject as it then existed and concluded: "An action under section 57 of chap. 73, Compiled Statutes, may be maintained where the plaintiff's title to the lands in question is derived from the state, under the provisions of the statute providing for the sale and leasing of the educational lands of the state, by lease." The opinion in the case contains the following: "The object which the legislature had in passing the above provisions was to extend the benefit of the common law in actions of this character to persons claiming title to real property, though not in the possession thereof. * * * All that seems to have anciently been necessary was, that the plaintiff be possessed of or entitled to an estate, and the defendant was also possessed of the semblance of a right or title to the same estate, which, though imperfect and invalid as against the rights of the plaintiff, yet might * * * become the prevailing title. This estate need not necessarily be one of realty, but may consist of personal property of any description. * * * A leasehold estate, running for twenty-five years in a valuable piece of property, may be of vastly greater value than a fee simple title to another piece. Besides, as we have already seen, the remedy at common law is not confined to real property at all, and the statute is an enlarging rather than a restricting one." In Langstaff v. Mitchell, 119 Cal. App. 407, 6

P. 2d 546, the court considered a statute providing that an action may be brought by any person against another who claims an estate or interest in real or personal property adverse to him and held: "A leasehold interest against an adverse claim is sufficient interest in real property to maintain an action under said last-named section." See, also, Elk Fork Oil & Gas Co. v. Jennings, 84 F. 839; Cozart v. Crenshaw (Tex. Civ. App.), 299 S. W. 499; Carbon Black Co. v. Ferrell, 76 W. Va. 300, 85 S. E. 544; 74 C. J. S., Quieting Title, § 23, p. 50.

These matters are emphasized and confidently relied upon by appellees: That appellant was told by appellee in a conversation they had about September 1, 1951, that he had summer tilled part of the land; that appellee was entitled to the use of it and was going to keep it; that he advised and warned appellant to stay off the land; that appellant knew appellee was doing work in preparation for a crop of wheat which could not mature until the following summer and appellant did not advise appellee of the negotiations for a lease of the land to appellant; and that the owner of the land permitted appellee to do work thereon that could only be compensated for by his having the crop taken from the land the following year without informing him that his tenancy would be interrupted. The conversation between appellee and appellant was concerning efforts of the latter to secure an agreement for his immediate possession of the land so that appellant could plant a part of it to winter wheat during the fall of 1951. It was after notice to terminate the tenancy of appellee was served and before he planted wheat on the land in 1951 and while appellee was entitled to the exclusive possession and use of all the land but at a time after he had notice and was charged with knowledge that all his rights to the occupancy and use of the land would end not later than March 1, 1952. There was no relationship between appellant

and appellee. The former was under no legal duty to inform the latter of anything. Appellee had an absolute right to till, plant wheat, and use the land until March 1, 1952, but he was charged with knowledge that his status in reference to it would on that date completely and finally terminate and any crop planted that did not mature or was not disposed of by him before that date would be his loss. The matters relied upon by appellee as recited above are of no significance in this litigation. This court spoke of the unimportance of quite similar matters in Vance v. Henderson, 141 Neb. 766, 4 N. W. 2d 833, as follows: "In the absence of reservations or restrictions, a tenant is entitled to the exclusive possession and use of the demised premises and may even maintain trespass against his landlord. There is nothing in this record to create a bar to the defendant planting wheat on the premises if he saw fit to do so. If, as plaintiff contends, the defendant's lease expired on March 1, 1942, and he had not used or otherwise disposed of the wheat, he ran the risk of losing his labor and seed."

Fenster v. Isley, 143 Neb. 888, 11 N. W. 2d 822, concerned these facts: Appellant was a tenant of land from year to year. The owner of the land gave appellant notice terminating his tenancy on March 1, 1942, advised him that the land would be leased to appellee from that date to March 1, 1943, and requested appellant not to do any summer fallowing and not to plant wheat. Appellant summer tilled 60 acres of the real estate and planted it to winter wheat. Appellee was authorized by the lease given him by the owner to take and he took possession of the land March 1, 1942, and prepared and planted crops on the land not then in wheat. Appellant gave notice in June 1942, that he was going to enter the premises and harvest the 60 acres of wheat he planted in the fall of 1941. Appellee commenced and successfully prosecuted an action of injunction to prevent appellant from going upon the land, trespassing thereon, and from

harvesting the wheat. Therein it is said: "Appellee had a written lease from the owner from March 1, 1942, to March 1, 1943. More than six months prior to March 1, 1942, * * * the appellant, who was a tenant from year to year, was notified that his tenancy would be terminated on March 1, 1942. Pursuant thereto he relinquished his possession of the lands prior to March 1, 1942, and the appellee went into possession. * * * Therefore, after March 1, 1942, the appellant had no further right to the possession of the premises by reason of his tenancy from year to year and appellee was in possession under his lease and entitled to enjoin any trespass thereon during the terms thereof * * *."

Appellant is entitled to have his leasehold in the land involved quieted and confirmed in accordance with the terms of his written lease bearing date of September 1, 1951, against any and all claims of appellees or either of them adverse thereto, and to have an order of injunction barring appellees and each of them from entering or trespassing upon the land or in any manner interfering with the tenancy of appellant of it during the term of his lease. Fenster v. Isley, *supra*.

The judgment should be and it is reversed and the cause is remanded to the district court for Perkins County with directions to render and enter a judgment in the cause in harmony with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.