ELDON A. PETERSON, APPELLEE, V. JOE VAK, APPELLANT.

100 N. W. 2d 44

Filed December 18, 1959. No. 34648.

*Halligan & Mullikin,* for appellant.

*John E. Dougherty* and *George B. Hastings,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

This case is here on appeal a second time. Our original opinion, filed May 20, 1955, which reversed the judgment of the trial court sustaining defendant's motion to dismiss made at conclusion of plaintiff's evidence, is reported as Peterson v. Vak, 160 Neb. 450, 70 N. W. 2d 436, 51 A. L. R. 2d 1221. Thereafter, on rehearing, we simply changed our method of reversal to one "for further proceedings according to law," as

reported in 160 Neb. 708, 71 N. W. 2d 186, 51 A. L. R. 2d 1221.

The action was a suit in equity brought by plaintiff, Eldon A. Peterson, against defendants, Joe Vak and James Vak. However, the only party defendant who claimed any right, interest, occupancy, or possession of the land involved is Joe Vak, and he will generally be called defendant. Plaintiff's petition, filed July 8, 1952, sought by appropriate allegations and evidence in support thereof to quiet title to plaintiff's leasehold interest and possession of a described 160 acres of farm land in Perkins County. Such leasehold interest and possession were allegedly acquired by virtue of a written lease dated September 1, 1951, for a period of 3 years and effective beginning March 1, 1952, which lease was duly executed by plaintiff and the owner and delivered to plaintiff. Plaintiff also sought to enjoin defendant from reentering the premises for the purpose of removing 100 acres of wheat planted by defendant on the land September 25 and 26, 1951, which was prior to the expiration of his year-to-year lease of the land from March 1, 1951, to March 1, 1952, but after timely written notice of termination of defendant's lease as of March 1, 1952, had been duly served upon him by the sheriff on August 29, 1951, as directed by the owner. Such notice also informed defendant that the owner claimed the right to enter upon the land during the fall of 1951 to plant it to wheat, and also, as disclosed by the record, he was timely warned personally before said planting by defendant, and after service of the notice terminating his lease that such planting by defendant would be done by him at his peril.

Defendant's amended answer and cross-petition, filed prior to new trial, denied that plaintiff had ever been in possession of the 100 acres which defendant had planted to wheat; and alleged in substance that in the spring of 1951 there were 100 acres subject to summer fallowing and defendant then had an oral agreement

for a lease with the owner's duly authorized agent whereby defendant had the right to summer fallow such land and plant wheat thereon in the fall of 1951 to be harvested by defendant in 1952. Defendant admitted that he timely received the notice from the owner to vacate the property and that his lease was terminated as of March 1, 1952, but alleged that after service of such notice, plaintiff attempted to negotiate with defendant for a right to enter the land and plant the wheat and pay defendant for his fallowing work; that defendant made an offer for such payment but plaintiff did not accept it, and defendant planted the wheat; that plaintiff had no right, title, or interest in the wheat or the property on which it was grown; and that if plaintiff had a lease from the owner, he was charged with knowledge of defendant's claim or demand, and was estopped to deny defendant's right to possession of the land and ownership of the wheat. Defendant prayed for dismissal of plaintiff's petition and quieting of title in the 100 acres of wheat. In that connection, the allegations of defendant's amended answer and cross-petition did not fundamentally change the issues as theretofore pleaded in his amended answer, except to change his prayer thereof from one for dismissal and equitable relief to one for dismissal and quieting of title in defendant to the 100 acres of wheat.

Plaintiff's reply to defendant's first amended answer denied generally; admitted that defendant was a tenant under an oral lease up to March 1, 1952, and that defendant was duly served with written notice to vacate the land and terminate defendant's tenancy; and alleged that defendant's oral lease expired by its terms on March 1, 1952, and that any alleged oral lease to defendant was for a longer period than 1 year, and void as in violation of the statute of frauds. In that connection, the case was tried as though plaintiff's reply were to defendant's second amended answer, and there is no contention otherwise. Plaintiff's answer to de-

fendant's cross-petition denied generally and renewed the prayer of plaintiff's petition.

On retrial, plaintiff offered all of the evidence adduced by him in the first trial as his case-in-chief, and same was received by stipulation. Defendant then adduced his evidence and rested; whereupon plaintiff adduced evidence in rebuttal, and at conclusion of all the evidence the trial court rendered judgment. It found generally in favor of plaintiff and against defendant; that defendant had no lease after March 1, 1952, either by extension, which, if proved, would have been void under the statute of frauds, or by estoppel; that defendant yielded possession under his previous lease; that plaintiff took possession under a valid lease from the owner and was in possession at the commencement of the action; that defendant had no interest in crops growing on the land at the time of surrender of his possession; and that plaintiff was entitled to a permanent injunction as prayed. It found and adjudged that the injunction theretofore issued should be made permanent; perpetually enjoined defendant, his agents, and servants from asserting or claiming any right, title, interest, or estate in and to the premises or any part thereof; and ordered that plaintiff should recover costs.

Defendant's motion for new trial was overruled and he appealed, assigning in substance that the findings and judgment were not sustained by sufficient evidence and were contrary to law. We do not sustain defendant's assignment. In that connection, defendant's brief argued among other things that the trial court erred in the exclusion of certain evidence offered by defendant, but neither his motion for new trial nor his brief assigned any such errors contained in a motion for new trial. It is elementary that defendant's contention will not be given further consideration. In such respect, we point out that authorities relied upon by defendant are entirely distinguishable and not controlling.

Our original opinion correctly summarized the rele-

vant and material evidence adduced by plaintiff, and we will not restate it at length here. Such opinion, after citing applicable and controlling authorities, held that: "A lessee of real estate may by virtue of section 25-21,112, R. R. S. 1943, maintain an action to quiet title to his leasehold.

"A tenant is entitled to the exclusive possession and use of the demised premises in the absence of reservations and restrictions in his lease and he may even maintain trespass against his landlord.

"If the nature of a threatened trespass on real estate is such that it will, if accomplished, prevent a substantial enjoyment of property or the possession thereof the remedy of injunction is appropriate to forestall the wrongful act."

In that connection also, our opinion, after citing and discussing Vance v. Henderson, 141 Neb. 766, 4 N. W. 2d 833, quoted therefrom as follows. " 'In the absence of reservations or restrictions, a tenant is entitled to the exclusive possession and use of the demised premises and may even maintain trespass against his landlord. There is nothing in this record to create a bar to the defendant planting wheat on the premises if he saw fit to do so. If, as plaintiff contends, the defendant's lease expired on March 1, 1942, and he had not used or otherwise disposed of the wheat, he ran the risk of losing his labor and seed.' " If the words "March 1, 1952," were substituted for "March 1, 1942," that statement, as hereinafter observed, would be one applicable and controlling here, unless avoided by some other issues of fact and of law relating thereto properly adduced and presented by defendant.

Our opinion also, after citing and discussing Fenster v. Isley, 143 Neb. 888, 11 N. W. 2d 822, a comparable case, quoted therefrom as follows: " 'Appellee had a written lease from the owner from March 1, 1942, to March 1, 1943. More than six months prior to March 1, 1942, * * * the appellant, who was a tenant from year

to year, was notified that his tenancy would be terminated on March 1, 1942. Pursuant thereto he relinquished his possession of the lands prior to March 1, 1942, and the appellee went into possession. * * * Therefore, after March 1, 1942, the appellant had no further right to the possession of the premises by reason of his tenancy from year to year and appellee was in possession under his lease and entitled to enjoin any trespass thereon during the terms thereof * * *.' " If the words "March 1, 1952, to March 1, 1955," were substituted for "March 1, 1942, to March 1, 1943," that statement and opinion would be applicable and controlling here, unless avoided by some other issues of fact and of law relating thereto properly adduced and presented by defendant. We conclude that they were not so avoided.

This appeal will be heard de novo here, as reaffirmed in Town of Everett v. Teigeler, 162 Neb. 769, 77 N. W. 2d 467. We also bear in mind the rule that: "When this court determines the law of the case on appeal, the trial court is bound thereby and its judgment in accordance therewith will not ordinarily be disturbed on a subsequent appeal." Snyder v. Lincoln, 156 Neb. 190, 55 N. W. 2d 614. Generally, however, if other and different issues of fact and of law relating thereto have been properly adduced and presented in a new trial, the law of the case is not controlling thereof on a subsequent appeal.

Defendant argued that testimony given by plaintiff and his father was entirely discredited because they testified falsely when they testified that they told defendant that plaintiff had a written lease for the land on September 1, 1951. We do not agree. We conclude that whether plaintiff's written lease was delivered to him on or before September 1, 1951, or in fact was not actually delivered until later, as argued by defendant, was not a material fact and has no significance here. Plaintiff's written lease was on its face dated and signed

September 1, 1951, after defendant's lease from March 1, 1951, to March 1, 1952, had been lawfully terminated as of March 1, 1952, by notice served on defendant August 29, 1951, and on that day or shortly thereafter, defendant actually knew that plaintiff had a lease commencing March 1, 1952. Until this litigation began defendant never told plaintiff or anyone else that he had any lease agreement for 1952. He simply claimed at all times, after receiving a notice of termination, that because he had summer fallowed the 100 acres, he was going to keep that land, plant wheat thereon in 1951, and harvest it in 1952. Before defendant planted the wheat, plaintiff offered to pay him a reasonable amount for his fallowing labor if plaintiff could go upon the land and plant the wheat, but defendant demanded $1,800 cash within 10 days for such work or he would plant the wheat and harvest the crop, but that plaintiff could have the rest of the 160 acres of land. However, plaintiff was unwilling to pay defendant that much, and negotiations failed. Whereupon defendant planted the wheat September 25 or 26, 1951, and thereafter yielded possession of the land to plaintiff on March 1, 1952. After that time plaintiff was at all times in possession, working the remaining land, giving the wheat land such care as it needed, and this action was brought July 8, 1952, to prevent defendant from reentering the land and harvesting the wheat on the 100 acres, as he threatened to do. Before defendant planted the wheat, George B. Hastings, plaintiff's own witness, testified that he warned defendant: "* * * you put that wheat in that ground at your peril * * * you have had notice that your lease is terminated * * * your lease is up."

Finally, as said in our original opinion with regard to plaintiff's alleged conversation with defendant about plaintiff's lease: "There was no relationship between appellant (plaintiff) and appellee (defendant). The former was under no legal duty to inform the latter of anything. Appellee had an absolute right to till, plant

wheat, and use the land until March 1, 1952, but he was charged with knowledge that his status in reference to it would on that date completely and finally terminate and any crop planted that did not mature or was not disposed of by him before that date would be his loss." As heretofore observed, authorities cited, discussed, and quoted from in our original opinion support such conclusion and defendant has cited none in point holding otherwise. We conclude that plaintiff was not estopped to deny that defendant had any right to possession or to reenter and harvest the wheat in 1952 as argued by defendant.

Be that as it may, defendant now attempts in the new trial to avoid the consequences of such conclusion by arguing that George B. Hastings, a lawyer at Grant, Nebraska, was at all times the general agent of the owner, Mrs. Esther K. Parr, for the purpose of managing and leasing the land involved, and that the last of March 1951, defendant had an oral agreement with said agent for a lease of the 100 acres which gave defendant the right to summer fallow the land, plant the wheat thereon in the fall of 1951, and reenter to harvest the crop in 1952. We do not sustain that contention.

With relation to such claimed oral agreement, defendant testified in substance that the last of March 1951 he went to see Mr. Hastings at his office with reference to summer fallowing the 100 acres. The defendant allegedly told Mr. Hastings that he had just signed that quarter section in the farm program for next year at the AA office, whereupon Mr. Hastings said: "'It's okay'. * * * 'You are all right,' I bring those papers and they will put my John Doe on it. * * * Well, I visited about a half-hour * * * And then I was stepping out of his office and Mr. Hastings brought a little note about as big as that (indicating) and he said, 'About this time of year I write those people how the land is being farmed and what crop there will be harvested through the summer.' So he asked how much crop we harvest

during the summer. I said 40 acres. And he said, 'What else'? And I said 100 acres of stubble which I summer-fallow and then harvest next year again. And then I was stepping out and he said—Mr. Hastings said, 'Go ahead, Joe, farm the land as you always did, and raise another good crop'—that's all he said."

Defendant also testified that after that he did some work on it; that he started fallowing the 100 acres about April 1951, and completed it with difficulty in August 1951 when he planted three or four rounds of wheat solely for the purpose of testing germination qualities of his seed; and that on September 25 and 26, 1951, he planted the wheat which was admittedly after he had received notice terminating his lease as of March 1, 1952, and after he knew that plaintiff had a written lease of the land from the owner commencing March 1, 1952, and after defendant had been warned not to plant the wheat both by his own witness and as appears in the notice of termination served upon defendant. The above is in substance all of the evidence upon which defendant relies to establish his claimed oral agreement for a lease of the land in 1952.

With relation to defendant's contention that Mr. Hastings was the authorized general agent of the owner to manage and lease the land, defendant called Mr. Hastings as his own witness. As such, Mr. Hastings testified positively that he never made any arrangements with defendant for the summer fallowing; that defendant never consulted with him and he never consulted with defendant about how defendant operated or farmed the land; that he had no recollection of ever consulting with defendant about how or when defendant did farm and operate the land; and that all he ever did or was authorized to do, except upon special instructions and directions of the owner, was to collect her share of the rental money and remit it to her, less his commission for doing so. Mr. Hastings generally acted as the owner's attorney when she needed one, and he advised her as such

when requested by her to do so. He did not assume to have nor did he have any authority to change the tenancy of the land. The change of tenancy here involved was made by the owner entirely on her own motion and her own volition. She directed Mr. Hastings to serve the notice of termination upon defendant, which he did, and she directed him to prepare the written lease between her and plaintiff from March 1, 1952, to March 1, 1953, and forward it to her. The written lease itself, which was so prepared and forwarded to the owner by Mr. Hastings, as he was directed to do, shows on its face not only that plaintiff and Mrs. Parr signed it, but also that the lease as originally prepared and forwarded to the owner had been changed by her on her own motion as requested by plaintiff in that she struck out "1953" as date of expiration of plaintiff's lease and substituted "1955" followed by her initials "E. P." in her own handwriting, thereby making plaintiff's lease a 3-year lease from March 1, 1952, to March 1, 1955.

In that connection, also, the record discloses that in response to one letter from defendant, the owner, Mrs. Parr, who lived in Syracuse, New York, sent defendant a typewritten letter signed by her and dated January 25, 1953, wherein she said: "I have received your letter and was interested to read of your business and friendly relations with my father over a period of thirty years. I'm sorry I have never been able to visit Perkins County and see our land and because of this have left all business connected with the farm in the hands of Mr. Hastings in whom I have the same confidence my father had." A note at the bottom of such letter, written in the owner's own handwriting, said: "In reply to your second letter which has just arrived, Mr. Hastings had my authority for completing the lease with Peterson."

From the foregoing evidence adduced by defendant, we conclude that Mr. Hastings acted as Mrs. Parr's attorney with relation to her business connected with the farm when she requested him to do so; that he was her

limited agent for the collection of rentals from the land remittance thereof to her, but that he was not her general agent for the purpose of managing and leasing the land or changing the tenancy thereof; and that with regard thereto he had no authority except and unless so instructed and directed by the owner.

If we assume for purposes of argument only that Mr. Hastings had authority to manage and lease the land, it would not change the result, because there is not sufficient evidence to support any conclusion that defendant ever had any oral agreement with Mr. Hastings for a lease of the land with a right to fallow the land, plant wheat thereon in 1951, and reenter to harvest the same when matured in 1952. Defendant's lease was lawfully terminated as of March 1, 1952, and defendant never had possession or a right to possession of the land thereafter. Such conclusion disposes of any necessity to discuss or decide any question relating to the statute of frauds. It is elementary that the mere fact that the trial court may have given a wrong reason for its judgment is immaterial if the judgment arrived at a correct conclusion in any event.

It is argued that under the circumstances, and in the light of past practice with regard to summer fallowing and fall wheat harvesting, it would be wholly inequitable to deprive defendant of the fruits of his labor. However, the record discloses without dispute that plaintiff and his father attempted to negotiate with defendant for the purchase of possession of the 100 acres before defendant planted the wheat, by paying him a reasonable sum for his fallowing labor so that plaintiff could plant the wheat and harvest it in 1952. Such negotiations took place on or after September 1, 1951, but before defendant had planted the wheat, so that defendant would be paid for his labor and plaintiff could plant the wheat. However, the negotiations failed because plaintiff did not pay defendant $1,800 within 10 days, and defendant said he was: "* * * 'keeping the land * * *

Keep off; I am keeping it, * * * there is no price, I am keeping the land. * * * I summer-tilled it and I am keeping the land.' " We find no evidence which upon any theory could sustain defendant's argument.

We conclude that the judgment of the trial court should be and hereby is affirmed. All costs are taxed to defendant.

AFFIRMED.