### HUMBLE OIL & REFINING CO. v. L. & G. OIL CO. et al.

#### No. 10161.

Court of Civil Appeals of Texas. Austin.

June 10, 1953.

Rehearing Denied July 15, 1953.

Powell, Wirtz & Rauhut, Robert C. Mc-Ginnis, Austin, Dillard Baker, Houston, Rex G. Baker and Nelson Jones, Houston, of counsel, for appellant.

John Ben Shepperd, Atty. Gen., Dean J. Capp, Asst. Atty. Gen., Harrington & Harrington, H. M. Harrington, Jr., Longview, for appellees.

GRAY, Justice.

Appellant sued named parties to cancel and declare void permits granted by the Railroad Commission to appellees, Magee and Massad, to drill two directionally deviated oil wells in the Hawkins Field in Wood County. A temporary injunction against all parties except the Commission was sought to restrain the further drilling or the production of oil from the two directionally deviated wells.

This appeal is from the order denying the temporary injunction prayed for.

Appellant's pleadings allege that the permits are void and should be cancelled because the Commission was without authority to issue them. In the alternative, as against all parties other than the Commission, appellant alleged that the entry on a one acre tract of land under the permits is a violation of its vested property and legal rights, it being the owner of an oil, gas and mineral leasehold estate on lands inclusive of said one acre tract, and further alleged that all of the lands "are underlain by a blanket sand and a common pool of oil and gas, and if defendants, other than the Commission, complete and produce said substitute wells, as they have formed the purpose and intention of doing and will do unless restrained and enjoined, it will reduce by a large and inestimable amount the quantity of oil and gas which will be produced by wells of plaintiff on its Henry lease and other leases in the vicinity, to plaintiff's great and irreparable damage, the exact extent of which is incapable of accurate determination, and for which it has no adequate remedy at law."

It is our opinion that the first pleading of appellant seeking injunctive relief against the action of the Commission must be tested by the rules of law applicable in appeals from its orders, and that the alternative pleading must be tested by the law applicable to appellant's rights as the owner of the leasehold estate on the one acre tract.

On April 9, 1952, the Commission granted to appellee, P. F. Magee, a permit to drill well No. 1 on the J. M. Henry .72 acre tract. The well location under this permit was on the Texas and Pacific Railroad right of way, 12 feet south from the north line of the right of way, 38 feet north from the center line of the main tract of said railroad, and midway between the east and west lines of said .72 acre tract.

On May 16, 1952, the Commission granted to appellee, Ralph Massad, a permit to drill well No. 1 on the H. S. Cobb 2.59 acre tract. The well location under this permit was on the Texas and Pacific Railroad right of way, 12 feet south from the north line of said right of way, 38½ feet north from the center line of the main tract of said railroad, and midway between the east and west line of said 2.59 acre tract.

Promptly after each of the above permits were granted appellant filed separate suits in the district court of Travis County to have said permits cancelled. Those suits were filed prior to the granting of the two permits in question here, they are now pending for trial, and will later be referred to as Rule 37 cases.

Appellees, Magee and Massad, desired to drill the wells authorized by their permits but were unable to secure from the railroad permission to move on the right of way. They acquired the fee title to a one acre tract of land to the north of said right of way and separated from it by U. S. Highway 80. They also secured special permission from the Highway Department

to cross under said highway in the directional drilling of their wells to their permit locations.

Appellant was and now is the owner of the oil, gas and mineral leasehold estate on the one acre tract which is known as a part of appellant's J. M. Henry lease.

On February 17, 1953, Magee and Massad applied, under the Commission's Rule 54, for permits to directionally deviate the drilling of their wells. The applications state the well locations under the Rule 37 permits, state that the Railroad Company has not consented to the drilling of the. wells on its right of way, and that the one acre tract has been purchased upon which to drill and operate the wells. The two applications are substantially the same. We quote from the application of appellee Magee:

"This application is sought under the provisions of Rule 54, under subdivision G–2 and G–4. Applicant would show that the conditions on the surface of the ground prevent or unduly complicate the drilling of a well at the regular location ·prescribed by applicant's permit, in that the railway company is insisting that the surface location will interfere with its operation of trains. Applicant would also show that the telephone wires and railroad signal wires, consisting of some 32 separate wires, are now maintained on the railroad right of way in such position as to unduly restrict the drilling at the ·regular surface location of applicant's permit and that this will also be obviated by the directional drilling here sought.

"Applicant would further show that adjacent to his lease is the Ralph Massad—H. S. Cobb Heirs lease on the North half of the Texas and Pacific Railway right of way through the H. F. Robinson Survey, and that a similar application is being made by Ralph Massad to directionally drill such Cobb well, and that the two wells will be drilled from the common surface location, and it will be advantageous from the standpoint of mechanical operation to drill both wells from the same

surface location, * * * to reach the productive horizon at essentially the same position as would be reached if the two wells were normally drilled from the permit locations.

"Applicant has secured special permission from the State Highway Department to cross under U. S. Highway No. 80, in the directional drilling of the well to the permit location, all as is shown by plat submitted to the State Highway Department, and upon which basis permit was issued on January 12, 1953. Applicant further submits plat showing applicant's surface location and permit location and the course deviation necessary to drill such well, and, in this connection, applicant asks for permit for the directional drilling from the surface location shown South 64° 23′ West 454.5 feet to the permit location, or to a point on applicant's lease within 25 feet of such permit location.

"In view of the fact that applicant is now prepared for immediate drilling operations, applicant asks that this application be acted upon immediately.

"Upon completion, applicant will file a complete angular deviation and directional survey of the finished hole, made at the expense of applicant, and applicant will notify the Railroad Commission and field representatives of offset operators at least 48 hours before such directional drilling has been completed and the survey thereof run, in order to afford all parties an opportunity to be present and witness the running of the completed survey."

On February 19, 1953, the Commission, without notice, granted the applications.

Appellant presents three points:

"I. The Commission was without jurisdiction to issue the permits in suit because the subject matter of these permits already was involved in litigation in the District Court.

"II. The permits in suit were issued without notice and hearing and, therefore, are void.

"III. The trial court erred in not enjoining appellees from entering and drilling oil wells on land under exclusive oil, gas and mineral lease to appellant."

The Commission's Rule 54 became effective April 1, 1949. It was passed, pursuant to notice and hearing, to prevent waste and as an aid in the conservation of the State's natural resources. The provisions of the rule material here are:

"(a) The term 'directionally deviate' as used in this order shall mean the deviation of a bore hole from the vertical or from its normal course in an intended predetermined direction or course with respect to the points of the compass * * *

"(b) Nothing in these rules shall be construed to permit the drilling of any well in such manner that it crosses property lines, except in cases where special permission has been granted by the Commission as the result of a hearing on such matter.

" * * * * * *

"(f) Before a permit for directionally deviating a well from its normal course will be granted, the operator shall furnish the Railroad Commission with a written statement setting forth the reasons for requesting the permit and showing the intended objective or location of the bottom of the well with reference to the property lines of the lease on which the well is drilled, together with a plat of the lease on which the well is drilled.

"(g) A permit for directionally deviating a well from its normal course will be granted by the Railroad Commission (1) * * * (2) where conditions on the surface of the ground prevent or unduly complicate the drilling of a well at a regular location prescribed by the well spacing rules there in effect, (3) * * * (4) in cases where it can be shown to be advantageous from the standpoint of mechanical operation to drill more than one well from the same surface location to reach the productive hori-

zon at essentially the same positions as would be reached if the several wells were normally drilled from regular locations prescribed by the well spacing rules there in effect. Permits to directionally deviate a well will be granted for no reason other than those mentioned in this rule except after notice and hearing by the Commission."

The two wells have been completed, they are being produced and are now on the Commission's producing schedule.

Appellees, other than the Commission, have filed their motion to dismiss this appeal on the ground that "all matters in controversy or to be affected by the prayer for relief" are moot. Appellant's prayer for relief was that appellees, other than the Commission, be enjoined "from prospecting, exploring, mining, operating, producing and storing oil, gas or other minerals at any well location on the plaintiff's above described J. M. Henry lease in the Hawkins Field, Wood County, Texas, pending final trial of this cause * * *."

The right to drill the wells and the right to produce oil or gas therefrom is to be determined in the Rule 37 cases. Those cases are relative to the right to drill the wells as exceptions to Rule 37 as it applies to the Hawkins Field. If those permits are not sustained then of course the right to produce oil or gas from the two wells drilled under them is at an end, and the surface locations of the wells will become immaterial. In such event Rule 37 provides production from such wells shall not be permitted and that the wells shall be plugged. On the other hand if the permits are sustained in the Rule 37 cases, the right to produce oil and gas from the two wells will be established, but the surface locations of the wells, with which we are here concerned, will remain in issue.

It is the authority of the Commission to issue the permits in question that is in issue here. Even if because the wells have been drilled and completed it can be said that the authorization to directionally drill them is moot pending the adjudication of the permits in the Rule 37 cases, there then remains the question whether the entry on

the one acre tract so interferes with the rights of appellant or the owner of the mineral leasehold estate on such one acre tract as to entitle it to injunctive relief. The motion to dismiss the appeal is overruled.

The Rule 37 cases put in issue the validity of the permits in question in those cases. However the filing of those suits did not suspend drilling operations nor the production of oil or gas under them. Under the facts here it is shown that the surface locations for the drilling of the wells under those permits could not be made on the right of way and therefore if drilling under them was to be done it was necessary that authorized surface locations for the wells be secured. It appears that Rule 54 was passed for such purpose. That rule deals with surface locations and not permits to drill; it is ancillary to Rule 37 because it is purely operational.

In the Rule 37 cases the court will determine the validity of those permits and be governed by the conditions as they existed at the time the Commission acted, at which time the surface locations for the wells was not in issue. The district court cannot make or authorize surface locations for the wells at places other than those stated in the permits before it, and the only authority to change such locations is vested in the Commission by its Rule 54.

After the Commission acted in the Rule 37 cases it became known that the drilling of the wells could not be done from the locations on the right of way. To this extent then there were changed conditions which placed the matter of ascertaining the rights of the parties relating to such changed conditions under the jurisdiction of the Commission. Magnolia Petroleum Co. v. New Process Production Co., 129 Tex. 617, 104 S.W.2d 1106.

Appellant says the permits in question are void because they were issued without notice. Rule 54, Sec. (b), supra, provides that permits shall not be issued without a hearing when the drilling of the well crosses property lines. The facts before us show: that appellant is the owner of the oil, gas and mineral leasehold estate

on the one acre tract, it being a part of its J. M. Henry lease; that appellees, Magee and Massad, own the fee to said one acre tract, and that the permits were issued after the applications were called to the attention of the individual members of the Commission and to the attention of the Chief Supervisor of the Oil and Gas Division, whose testimony shows that the permits were issued in accordance with the Commission's administrative construction of the rule.

The one acre tract adjoins Highway 80 which adjoins the railroad right of way. Appellees, Magee and Massad, applied for permits to drill across the line between their one acre tract and the highway and across the line between the highway and the right of way on which their Rule 37 permits authorized them to drill. The Highway Department, prior to the filing of the applications, gave its permission to the crossing and hearing as to it was not necessary.

Under the facts appellant's right to notice depends on its rights as the owner of the leasehold estate on the one acre tract as opposed to the rights of the owner of the fee. A consideration of such rights is here limited to the surface locations since other rights will be determined in the Rule 37 cases. However, if we assume there is opposition in these rights, the inquiry before the Commission as to title and the right of possession of appellees, Magee and Massad, to the land in question was limited to a reasonably satisfactory showing by them of a good faith claim. It did not adjudicate questions of title and the right of possession to the land. Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424; Magnolia Petroleum Co. v. Railroad Commission, 141 Tex. 96, 170 S.W.2d 189; 31-A Tex.Jur., Sec. 366, p. 619, Sec. 415 at p. 719, and Sec. 430, p. 756.

Indeed the permits may be valid and, because of defects in title determined in other proceedings, the holders of the permits may never drill the wells.

If appellant is an interested party and entitled to notice it is because of its being the owner of the leasehold estate on the one

acre tract, and in this proceeding could have disputed the rights of Magee and Massad to the permits only on the basis of its asserted right to possession and title to the surface, neither of which questions could have been adjudicated by the Commission. Other rights, such as confiscation and waste, arising by reason of appellant being the owner of leases on adjoining lands may be determined in the Rule 37 cases in which there is no question as to notice.

We will now consider appellant's alternative pleading.

Appellant's petition, together with the facts before us, involve the application of an order of the Commission issued under its own rule permitting the surface location of wells to be made for directionally deviated drilling and, under the alternative pleading, we need to determine only if the surface locations interfere with appellant's rights under its mineral leasehold estate to such extent as to entitle it to injunctive relief.

It appears that the two wells were drilled to an approximate depth of 4,550 feet. Appellant does not contend that the bottom hole location is not under the railroad right of way, nor that the production from the said wells is from sands other than those underlying said right of way. It does not show that it intends to drill at the surface locations, but argues that it may want to do so.

■ The terms and conditions of appellant's oil and gas lease show that its effect was to sever the surface estate from the mineral estate. The surface estate acquired by Magee and Massad in the one acre tract was one in fee simple "and includes the rights of possession, powers of control, occupancy, use and alienation. * * * the surface estate is servient to the mineral estate for the purposes of the mineral grant, but even this right is to be reasonably exercised with due regard to the rights of the owner of the surface." Gulf Production Co. v. Continental Oil Co., 139 Tex. 183, 132 S.W.2d 553, 562, and cases there cited,—opinion withdrawn,

139 Tex. 183, 164 S.W.2d 488; 31-A Tex. Jur., Secs. 125 and 126, pp. 206, 207.

■ Whether appellees' (Magee and Massad) occupancy of the one acre tract interfered with appellant's rights under its lease was a question of fact to be determined by the trier of the facts. Grubstake Inv. Ass'n v. Coyle, Tex.Civ.App., 269 S.W. 854, error dism.; Cozart v. Crenshaw, Tex.Civ.App., 299 S.W. 499. By denial of the injunction the trial court impliedly found there was no interference.

The record before us does not show that the trial court abused his discretion in not granting the injunction prayed for.

The judgment of the trial court is affirmed.

Affirmed.

HUGHES, Justice (concurring).

I am of the opinion that this case is moot insofar as complaint is made of the manner in which the wells were drilled. They have been drilled. Since a well may be lawfully drilled pending decision of a Rule 37 Case the Commission, of necessity, must retain its jurisdiction and authority to see that such well is drilled in accordance with its rules and regulations. This is the character of authority exercised by the Commission in this case under its Rule 54. I know of no reason for a court to enjoin production from a well at the request of a third party because of his dissatisfaction with the manner in which the well was drilled albeit as authorized by the Commission.

As to the question of notice it is significant to me that Sec. (b) of Rule 54 does not provide for notice but only that authorization to cross property lines in directionally drilling a well will only be granted "as the result of a hearing on such matter."

The hearing insofar as crossing property lines is concerned could only be for the purpose of ascertaining to the satisfaction of the Commission that the applicant had a good faith claim of right to cross such property lines.

The jurisdiction of the Commission could not be enlarged by the giving of notice.

Regardless of the character of notice and regardless of the extent of hearing had the Commission could not grant authority for one person to trespass on the property of another.

This, to me, explains the lack of requirement of notice in the Rule. It would be idle for the Commission to give notice of its intention to perform and act beyond its jurisdiction. I, therefore, am of the opinion that notice to Humble was not necessary.

I fully agree with the Court's opinion that there was no abuse of discretion in denying injunctive relief based on Humble's claimed violation of mineral leasehold rights.