Santiago CANTU et al., Appellants,

v.

George B. PARR et al., Appellees.

No. 13706.

Court of Civil Appeals of Texas.

San Antonio.

Aug. 10, 1960.

Rehearing Denied Aug. 29, 1960.

---

**5.** See footnote 2.

Perkins, Floyd & Davis, Sam H. Burris, Alice, Walter P. Purcell, San Diego, for appellants.

Lloyd, Lloyd & Dean, Alice, Gerald Weatherly, Laredo, O. P. Carrillo, Archer Parr, San Diego, for appellees.

MURRAY, Chief Justice.

On May 7, 1960, there was held in Duval County, Texas, a General Democratic Primary Election. On May 10 (all dates herein referred to were during the year 1960) the Democratic Executive Committee of Duval County met and declared that, among others, the following persons were elected to the offices of County Chairman and Precinct Chairman, respectively, as follows:

Santiago Cantu, County Chairman,
G. J. McBride, Chairman of Precinct No. 6,
Mrs. Betty Canales, Chairman, Prec. No. 9,
Jesus G. Garcia, Chairman, Prec. No. 7,
Indalecio Ramirez, Chairman, Prec. No. 4,

who will be hereinafter referred to as Santiago Cantu et al.

Thereafter, on May 12, George B. Parr, David Benavides, Florentino Benavides, Santiago Sanchez and Alfredo Salinas, who will be hereinafter referred to as George B. Parr et al., acting under the provisions of Art. 13.43a, Vernon's Texas Election Code, V.A.T.S. filed a petition with the District Clerk of Jim Wells County, asking that the District Court of that county appoint three commissioners to recount the votes in certain voting boxes in Duval County and report back to the court within five days the result of their recount.

The trial court on the same day granted such petition and appointed John L. Carlisle, J. C. Dunn and R. F. Clinkscales,

Commissioners to make such recount. The three commissioners on the next day made the following report of their recount, showing that

for County Chairman, George B. Parr received 2772 votes;

Santiago Cantu " 2440 "

Leland Clary " 1 vote;

for Chairman Precinct No. 4, Alfredo Salinas received 120 votes;

Indalecio Ramirez " 82 votes;

for Chairman Precinct No. 6, G. J. "Jiggs" McBride received 106 votes;

David Benavides " 111 votes;

for Chairman Precinct No. 7, Santiago Sanchez received 37 votes;

Jesus Garcia " 33 votes;

for Chairman Precinct No. 9, Mrs. Amando Canales received 8 votes;

Florentino Benavides " 11 votes.

———◆———

Santiago Cantu et al., filed their contest of this report of the three Commissioners on May 16, within the time required by the provisions of Art. 13.43a, supra. Thereafter, amended pleadings were filed and the matter transferred to Duval County for a hearing. The case was consolidated with several election contests which had theretofore been filed in Duval County, and the consolidated causes were finally disposed of on June 10. Evidence was heard, but none of the parties undertook to show just how many legal votes he received. Santiago Cantu et al. were treated as contestants, and George B. Parr et al., as contestees. When Santiago Cantu et al. rested this cause, the trial court granted the motion of George B. Parr et al., for judgment in their favor, evidently because Cantu et al. had failed to show that the recount was incorrect.

Santiago Cantu et al., along with one Leonel Garcia, who had been a candidate for Constable, Prec. No. 4, Duval County, have prosecuted an appeal. We will discuss the Constable's contest later.

■ Appellants' first contention is that the provisions of Art. 13.43a, supra, are unconstitutional and void in that no provision for notice to opposing parties is provided at any stage of the proceedings. We sustain this contention. We find no objection to paragraph one of this article, but the remaining provisions are void for failure to provide for any notice, at any stage of the proceedings, to opposing candidates.

Art. 13.43a, supra, reads as follows:

"Notwithstanding any other provision of this Code, and particularly notwithstanding Section 220 thereof, the district courts of this state are vested hereby with jurisdiction to order recounts and to hear and determine election contests relative to the party offices of precinct chairman and county chairman, the same as though it were a contest for a place on a party ticket for public office.

"Any candidate for precinct chairman or county chairman, within two days after the canvass of the votes by the county executive committee, may file in the district court an application for a recount of the votes for such office. The sum of Fifty Dollars ($50.-00) in cash to cover the cost of such recount shall be deposited with the clerk at the time of filing. Thereupon it shall be the duty of the court to order

forthwith a recount of such votes by three disinterested commissioners appointed by the court. The report of the commissioners showing the results of such recount shall be filed with the court at such time as the court may direct, but in no event later than five days from the date of the order of the court appointing the commissioners. Either party within three days from the filing of such report may file a contest as to such election, and the recount thereof, and the same shall be tried and adjudicated the same as though it were a contest for a place on a party ticket for public office. The court shall have the power to issue all orders and writs necessary to protect its jurisdiction and effectuate and facilitate such recount and the trial of any such election contest.

"If no contest is filed within such three-day period by either party, and there be only two candidates for such office, the court shall enter an order declaring the person receiving the highest number of votes as shown by such recount to be duly elected precinct chairman or county chairman.

"If there be more than two such candidates, and none of them is shown by the recount to have received a majority of the votes cast in such race, the court shall enter its order declaring the two persons receiving the highest number of votes to be the two candidates to be placed on the ballot for the second primary.

"In its final judgment the court shall assess the costs as in any civil suit. Appeals shall lie from the orders of the court the same as though it were a contest for a place on a party ticket for public office. Acts 1951, 52nd Leg., p. 1097, ch. 492, art. 220a, added Acts 1957, 55th Leg., p. 545, ch. 254, § 1."

This article would authorize a district court to hear and determine the rights of a

winning candidate and declare him to be the loser in a judicial or statutory proceeding of which he has no notice. It is true that the article provides for a hearing if the adverse candidate by chance may hear of the proceedings and file a contest of the report of the commissioners within three days after it is filed, but if, by chance, he does not hear of such proceeding and timely file his contest, he will find himself confronted with a final judgment of the district court taking away from him the office he had won according to the canvassing board, and in addition thereto be required to pay the costs of court.

There cannot be any presumption here that notice is implied. The steps are set out in rapid succession. The application for the recount must be filed within two days after the canvassing board has declared the result of the election, the court must forthwith appoint the three commissioners, they must report within five days, and an opposing candidate, whether he has heard of the recount or not, must file his contest of such report within three days thereafter or be precluded by a final judgment.

■ Since the famous case of Trustees of Dartmouth College v. Woodward, 4 Wheat 518, 4 L.Ed. 629, it has generally been conceded that the due process of law is "A law which hears before it condemns, which proceeds upon inquiry and renders judgment only afterwards."

"Due process of law" is required by both our Federal and State Constitution. The fourteenth amendment of our Federal Constitution provides, among other things, that:

"Nor shall any State deprive any person of life, liberty, or property, without due process of law."

Texas Constitution, Art. 1, § 19, Vernon's Ann.St., provides, "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." This applies to the

legislative as well as the judicial branch of our State government. In 12 Am.Jur. p. 283, § 586, it is stated:

"The requirements of due process of law extend to every case of the exercise of governmental power. The limitations inherent in the requirements as to due process of law are binding equally on the United States and on the several states.

"A state may not by any of its agencies, legislative, judicial, or executive, disregard the constitutional prohibition. The inhibition includes all functionaries of state government, judicial as well as political."

See, also, Ladner v. Siegel Co., 298 Pa. 487, 148 A. 699, 68 A.L.R. 1172; Francisco v. Board of Dental Examiners, Tex.Civ.App., 149 S.W.2d 619.

In Sterling v. Ferguson, 122 Tex. 122, 53 S.W.2d 753, 763, the Court in speaking of an injunction which would prevent the holder of a certificate of nomination from having his name printed upon the special ballot said: "Such an injunction no court has power to issue, except after final trial on the merits." See, also, Thomason v. Seale, 122 Tex. 60, 53 S.W.2d 764.

A case in point is Francisco v. Board of Dental Examiners, supra. There it was held that a statute which provided for revocation of the license of a dentist on proof of a conviction of the dentist of a felony, which does not provide for notice, hearing or review of the order of conviction, is unconstitutional as denying "due process of law."

In 12 Am.Jur. 267, § 573, it is stated: "The essential elements of due process of law are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a tribunal having jurisdiction of the cause."

In Ex parte Renfro, 115 Tex. 82, 273 S. W. 813, 40 A.L.R. 900, it was held that everyone is entitled to his day in court, and that summary proceedings are not suitable to try claims of title.

It is not sufficient that a party might accidentally hear of the recount conducted under the provisions of Art. 13.43a, supra, and come in and file an answer, and thereby acquire a right to his day in court. The statute should make certain that he will have his day in court by either expressly or impliedly providing for notice before he is deprived of his certificate of election. Industrial Accident Board v. O'Dowd, 157 Tex. 432, 303 S.W.2d 763; Lee v. Purvin, Tex.Civ.App., 285 S.W.2d 405.

■ There can be no doubt that a certificate of nomination or election is a valuable property right. Taylor v. Nealson, 132 Tex. 60, 120 S.W.2d 586.

■ George B. Parr et al., perhaps out of an abundance of precaution, filed regular election contests in Duval County within the time required by Art. 13.30, Vernon's Tex. Election Code. These suits were consolidated with the proceedings had under Art. 13.43a. However, George B. Parr et al. did not come forward with the proofs required to entitle them to be successful in an election contest under the provisions of Art. 13.30, supra. The first paragraph of Art. 13.43a would seemingly authorize such regular election contests, but in these contests George B. Parr et al. were the contestants and Santiago Cantu et al. were the contestees, and the burden of proof was upon George B. Parr et al. to show by a preponderance of evidence that they received more legal votes than did their opponents.

The same thing is true with reference to the contest between Pablo Chavera and Leonel Garcia for the nomination to the office of Constable of Precint No. 4, Duval County. This was a regular contest of election for the nomination for this office by Pablo Chavera as contestant, and the burden of proof was upon him to show by

a preponderance of the evidence that he received more legal votes for the office than did his opponent, Leonel Garcia. He offered no such proof, and the judgment wherein it declares him nominated must also be reversed and judgment here rendered in favor of Leonel Garcia.

The judgment of the trial court in its entirety will be reversed and judgment here rendered declaring Santiago Cantu elected to the office of County Chairman of Duval County; Indalecio Ramirez elected to the office of Chairman, Precinct No. 4; G. J. McBride elected to the office of Chairman, Precinct No. 6; Jesus G. Garcia elected to the office of Chairman, Precinct No. 7; Mrs. Amando Canales elected to the office of Chairman, Precinct No. 9; and further declaring Leonel Garcia nominated to the office of Constable, Precinct No. 4 of Duval County, and to be entitled to have his name printed upon the official ballot of the General Election to be held on November 8, 1960, as the Democratic Nominee for such office of Constable.

Reversed and rendered.

BARROW, Justice.

I concur in the opinion of Chief Justice MURRAY in the reversal and rendition of the judgment of the trial court in this cause, for the reasons stated therein and the following additional reasons, except, however, that I do not concur in the statement that the first paragraph of Article 13.43a would seemingly authorize such contests under the provisions of Article 13.30. It is my opinion that the passage of the 1957 statute was intended to and did provide an exclusive remedy for the contest of primary elections for party offices and expressly provided the procedures, step by step, to be followed in such contests. The caption of the Act, the body of the Act, and the emergency clause so declare. Hence it is my opinion that the procedures provided for in Art. 13.43a are exclusive, and even if the Act is constitutional, which

we do not hold, the procedures set forth therein must be strictly followed. 15–B Tex.Jur. p. 464, § 97.

It is my opinion further that the district court of Jim Wells County had no authority whatever to conduct the proceeding, for the reason that the language of the first paragraph, when properly construed, requires the proceeding to be brought in the county where the election was held, as provided in Section 2 of Article 13.30. Statutory provisions fixing venue in election contests must be followed. 29 C.J.S. Elections § 253, p. 367. See, also, Calverley v. Shank, 28 Tex.Civ.App. 473, 67 S.W. 434. If that is not true, then the contest of this Duval County election could be filed and conducted in any county in the State and could proceed to a final determination without notice to the parties against whom the proceedings are brought. It is, therefore, my opinion that the so-called contest begun and filed in the District Court of Jim Wells County is void. Moreover, venue in the conduct of an election contest as provided in section 2, Article 13.30 is not a mere privilege that can be asserted or waived under the provisions of Article 1995, Vernon's Ann.Civ.Stats., and particularly the privilege can not be asserted by the party who instituted the proceeding in Jim Wells County, as was done in this case. Therefore, it is my opinion that the order of the court transferring the case from Jim Wells County to Duval County, upon plea of privilege of Parr et al., is also void.

It is my opinion further that the contest filed by Parr et al., and each of them, in Duval County did not confer authority on that court, for the reason that it was not filed within the time and in the manner provided for in Article 13.43a, which is the exclusive statutory proceeding for such contests of primary elections for the offices of Precinct Chairman and County Chairman.

For the reasons aforesaid, I concur in the reversal and rendition of the judgment of the trial court in this cause.

POPE, Justice.

I respectfully dissent. Article 13.43a, Vernon's Texas Election Code, is constitutional and the judgment should be affirmed. The majority has ruled that statute unconstitutional on the belief that it denies due process of the law by omitting provisions for notice. This is an interesting conclusion, since before the enactment of that statute in 1957, the law not only failed to provide for notice; it failed to provide for a contest at all with respect to the offices of party precinct chairmen and county chairmen. Wronged persons were wholly without remedy, and that was constitutional.

The majority has fallen into the error of treating this as a judicial matter. The Supreme Court has settled the law to the contrary. "Election contests are legislative and not judicial proceedings," said the Court in Duncan v. Willis, 157 Tex. 316, 302 S.W.2d 627, 630; 15–B Tex.Jur., Elections, §§ 143–145. Such matters are determined by the Election Code itself.

The majority has fallen into further error in holding that the mere administrative counting of votes and the declaration of the results is a matter which requires some form of special notice to the opposing candidate if due process is to be observed. Prior to Article 13.43a, supra, votes were counted and results declared without such a provision. Does it follow that other existing statutes are void for omitting notice that votes will be counted? Art. 5.05, Election Code, provides for challenges and the counting of absentee votes by a special canvassing board. Are candidates entitled to special notice of that? If not, is that article void? The answer is that the counting of votes and the declaration of the results has never been a matter which required special notice, since the statute itself is notice of what is to be done, by whom and when. Candidates know that they are not elected or defeated until the votes are declared after the count. The statute informs them of that fact. State of Wash-

ington ex rel. Bond & Goodwin & Tucker v. Superior Court, 289 U.S. 361, 53 S.Ct. 624, 77 L.Ed. 1256. Art. 13.43a informs party officials also of the fact that there may be a recount followed by a report of the results.

Art. 13.43a sought to correct election wrongs by providing for two new and different matters. (1) It provided for a count of votes by three disinterested commissioners appointed by the district judge. Until votes in an election are counted and the results declared, and not until then, no one knows who won, who lost, who should contest, and who should defend. (2) It next provided, after the report is made and the results are declared, that a contest might be filed even for party offices. Hence, counting and contesting are two distinct matters. The one must follow the other.

After the count and declaration of results, it is known who won and who lost the count. Then, but not before, Art. 13.43a states that a contest may be filed. When we come to the matter of the contest, we find that Art. 13.43a does make provision for notice. That Article for the first time authorizes a contest of party offices, but it did not do the needless thing of rewriting the details of the contest procedure which were already embraced in another section of the Election Code, Article 13.30. Instead it provided: "Either party within three days from the filing of such report may file a contest as to such election, and the recount thereof, and the same shall be tried and adjudicated the same as though it were a contest for a place on a party ticket for public office." Art. 13.30 requires notice to the opposite party and details the procedure, and the questioned Article, 13.43a, provides that it shall be followed. Art. 13.43a therefore does satisfy the notice requirements for a contest. The requirement that there also must be notice for the count, or recount, of course, will not be found in the Election Code or elsewhere, for that has never been the law.

Even if the statute be unconstitutional, the majority should remand the case for retrial instead of rendering it. Santiago Cantu et al. win if the whole block of absentee votes are cast out, the valid votes along with the invalid ones. If the absentee votes are counted, as the trial court held they should be, George Parr et al. will win. In Scruggs v. Perkins, Tex.Civ.App., 233 S.W.2d 913, this Court held, in the face of the irregularities there detailed, that the court should not discard all absentee votes without regard to whether they were valid, since that would disfranchise the valid voters. In this case, the trial court came to that same conclusion after contest, after hearing of evidence, and after trial. Under the precedents of this Court, that was a proper decision.

The majority first strike down Art. 13.-43a as unconstitutional. That left the original contests which George Parr et al. had separately filed. Ordinarily in a contest, the burden of proof is upon the contestant. Santiago Cantu et al., however, also filed their contest as provided by Art. 13.43a. Upon the consolidation of all suits, the trial court placed the burden of proof upon Cantu et al. on their contests, who, according to the recount, had lost the election. If Art. 13.43a is unconstitutional, then George Parr et al. were relegated to their contest and had the burden of proof, though the trial court cast it on Cantu et al. If the trial court erred in placing the burden on Cantu et al., the case should be remanded for a proper trial upon the correct procedure. The results of an election should not turn upon the error of the trial judge in fixing the burden of proof upon the wrong party. The election should be determined by who received the most votes as determined by a proper trial. There is time for such a trial.

I conclude, therefore, that Article 13.43a is a constitutional statute and the case should be affirmed; but if not, the case should be remanded for a correct trial.