**L & G OIL COMPANY, Appellant,**

**v.**

**RAILROAD COMMISSION of Texas et al., Appellees.**

**No. A–9399.**

Supreme Court of Texas.

May 28, 1963.

Houghton Brownlee, Jr., Austin, H. M. Harrington, Jr., Longview, for appellant.

Waggoner Carr, Atty. Gen., Austin, Cecil C. Rotsch and Linward Shivers, Asst. Attys. Gen., Lloyd Armstrong and Clyde E. Willbern, Houston, Powell, Rauhut, McGinnis, Reavley & Lochridge, Frank Douglass, Austin, for appellees.

CULVER, Justice.

This is a direct appeal from a judgment of the 126th District Court of Travis County, denying appellant a temporary injunction in a cause involving the validity of administrative orders of the Railroad Commission.

The record in this appeal shows that during 1962 the Railroad Commission, in conjunction with the Attorney General's office and the Department of Public Safety, conducted an investigation in the East Texas field to determine the extent of the violation of the rules and regulations of the Commission and the conservation laws of the State of Texas by certain oil operators in the drilling of illegally slanted oil wells.

In the Kilgore district within the last eight or ten months the Commission personnel have conducted approximately 420 inclination surveys and approximately 97 directional surveys. The Commission in the past has been obtaining a survey company to do this type of work whenever a directional survey was required, as the Commission does not have the necessary personnel or equipment. The cost has been paid by the Attorney General out of a trust fund accumulated for that purpose. Approximately 750 wells have been shut down as a result of the violation of the Commission's rules and regulations reflecting a daily production of approximately 11,000 barrels and there are approximately 150 more wells that should be surveyed.[1] The Commission itself operates upon an appropriation from the Legislature and has no funds available for running inclination or directional surveys.

In order to deal with this problem, the Commission on August 17, 1962, gave notice that on September 20, 1962, a hearing would be had in the Driskill Hotel in Austin "to consider the matter of changing Statewide Rule 54 so that the bottom hole locations of oil and gas wells in the State of Texas will be more accurately known to the Commission". Such hearing was held, and pursuant thereto on November 2, 1962, the Commission entered an order amending Rule 54 to include § V, which reads as follows:

"V. Surveys on Request of Other Operators:

"A. The Commission, at the written request of any operator in a field, shall determine whether a directional survey, an inclination survey, or any other type of survey approved by the Commission for the purpose of determining bottom hole location of wells, shall be made in regard to a well complained of in the same field.

"1. The complaining party must show probable cause to suspect that the well complained of is not bottomed within its own lease lines, and must also show that he is the owner or operator of a well located within the field.

"2. Unless the Commission cam make the appropriate survey with its own personnel and equipment, the complaining party must agree to pay all costs and expenses of such survey, and

---

I. See Official Report to House of Representatives by its General Investigating Committee.

shall assume all liability, and shall be required to post bond in a sufficient sum as determined by the Commission as security against all costs and risks associated with the survey.

"3. The complaining party and the Commission shall agree upon the selection of the well surveying company to conduct the survey, which shall be a surveying company on the Commission's approved list.

"4. The survey shall be witnessed by the Commission, and may be witnessed by any party, or his agent, who has an interest in the field.

"5. Nothing in these rules shall be construed to prevent or limit the Commission, acting on its own authority, in conducting spot checks and surveys at any time and place for the purpose of determining compliance with Commission rules and regulations."

■ We are concerned in this appeal with whether or not the Commission may, in order to enforce its valid rules and regulations and to prevent the illegal production of oil and gas, adopt the method set forth in § V.

■ We construe § V as contemplating that the survey authorized thereunder will be the act, and under the direction, of the Commission, and in the discharge of its statutory duties and powers.

Appellant L & G Oil Company, a trade name under which H. G. Lewis, Jr. operates and produces oil, has a well on the Alexander lease. Tidewater Oil Company has a producing well on the Castleberry lease, which adjoins the Alexander lease on the west. Both leases are located in the East Texas Oil Field in Gregg County.

On November 29, 1962, Tidewater requested the Commission to authorize a directional survey on the L & G Oil Company No. 2 M. E. Alexander well, in conformity with § V of Statewide Rule 54. The application of Tidewater alleged that there is probable cause to suspect that L & G's well is not bottomed within its own lease lines, and that while the surface location of the well is 331 feet from the west lease line, an old survey filed by L & G with the Commission, showed the bottom hole location to be only six feet from the west line.

On December 4th the Commission granted the application, its order reading in part as follows:

"The Commission being unable to make a directional survey with its own personnel and equipment, hereby authorizes Tidewater Oil Company to make the directional survey through the use of an approved surveying company, subject to the following conditions:

"1. Tidewater Oil Company shall pay all costs and expenses of the survey.

"2. Tidewater Oil Company shall post bond for the full value of $25,000 payable to L. & G. Oil Company, as security against all costs and risks associated with the survey, which bond must be approved by the Commission before becoming effective and to remain effective until released at the conclusion of the surveying operation. Commission approval and release shall be recorded on the face of this order.

"3. Tidewater Oil Company, in addition to acceptance of the bonding condition, shall assume all liability without limitation for damages to such well resulting from the directional surveying operations, including the preparation of the well for survey, and the replacing of the well to the same condition as existed when operations commenced.

"The Commission approves Tidewater Oil Company's selection of Sperry-Sun Well Surveying Company to run the directional survey.

"Such survey shall be witnessed by Railroad Commission personnel, and it

may be witnessed by any party, or his agent, who has an interest in the field.

"Authority to conduct the directional survey in the manner and subject to the conditions above set out is granted on this the 4th day of December, 1962, and it is so ordered.

"IT IS FURTHER ORDERED, and L & G Oil Company is so directed, that interference by such operator in the conduct of the directional survey authorized herein shall result in the severance of pipeline connections for such lease."

 L & G challenges the validity of this order on the ground that the Commission has attempted to usurp the rule-making power of the Supreme Court and before it may conduct or order a directional survey to ascertain the bottom hole location, it must resort to the court for that authority as provided by Rule 167 of Texas Rules of Civil Procedure relating to discovery as amended in 1957. In support of that contention it cites the case of Hastings Oil Company v. Texas Company, 149 Tex. 416, 234 S.W.2d 389. Apparently L & G is claiming that the Commission, absent court permission, would not have the authority to enter upon L & G's property and conduct the survey even with the Commission's own personnel and equipment. Hastings makes no such holding. In that case the Texas Company alleged that Hastings had so deviated its well that it had penetrated the subsurface of the Phillips tract, which amounted to a trespass. After a hearing the trial court found that there was probable cause to believe that the allegation of the Texas Company was correct. We held merely that the court was authorized to order a directional survey as an integral part of the temporary injunction under Rule 737 relating to discovery.[2] Hastings Oil Company was insisting that the court was vested with no such authority.

 Admittedly if Tidewater had sought authority for this action independently and for its own purposes it would have had to resort to the court just as Texas Company did in the above case. But that is not the situation here. The directional survey has been authorized by the Commission upon the request of Tidewater, which actually is in the nature of a complaint, but it is not for the private advantage and benefit of that company. While incidentally the location of the bottom hole of L & G's well may be of some value to Tidewater, yet that is not the reason for the issuance of this order to any extent or degree. To the contrary the information is sought by the Commission in accordance with § V of Rule 54, to enable the Commission to enforce its regulations and to discover and prevent the illegal production of oil and gas. The fact that the courts have a discovery procedure for private litigants does not require the Railroad Commission, in the performance of its statutory duty to enforce conservation laws of the state to follow the same procedure. Rule 167 requires that an action be pending before discovery relief will be granted. The Legislature has delegated to the Railroad Commission broad and extensive powers to regulate and control the drilling for and production of oil and gas to the end that these natural resources be conserved and that the interest of the public as well as individual operators be protected. For instance, Art. 6029, Vernon's Ann.Civ.St., provides that the Commission shall not only make but shall enforce rules, regulations and orders for the conservation of these resources, including rules, regulations and orders to prevent waste, to require dry or abandoned wells to be plugged; for the drilling of wells and preserving the record thereof; and to require wells to be drilled and operated in such manner as to *prevent injury to adjoining property*. Surely the Commission, invested with all of these powers and responsibilities, is not required to bring a

---

2. Rule 167, amended in 1937 in conformity to the holding in the Hastings case to permit entry upon designated land.

suit each time that it seeks to make an investigation or inspection as to whether its rules and regulations are being enforced. Such a requirement has, so far as we know, never been urged before and if adopted would cripple the Commission and incapacitate it from carrying out and performing the duties imposed upon it by legislative command. It would effectively nullify the statutory enactments. We expressly hold that Rule 167 has no application here.

■ Next, L & G says that the adoption of § V as an amendment to Rule 54 is invalid because in giving notice of its intention to amend Rule 54, the Commission did not advise the public or the industry as to how the rule would be amended or that it would be amended by the discovery procedure as was thereafter provided in the amendment that was adopted. We believe there is no merit in this objection. The hearing was called on the Commission's own motion and gave notice that it was called "to consider the matter of changing Statewide Rule 54 so that the bottom hole locations of oil and gas wells in the State of Texas will be more accurately known to the Commission." The notice further provided:

"The scope of this Hearing shall be limited to the consideration of the amendment of Statewide Rule 54.

"PURSUANT To said Hearing, the Commission will enter such rules, regulations, and orders as in its judgment the evidence presented may justify."

As a result of that hearing § V was adopted as an amendment to Rule 54. Since the meeting was called for the purpose of considering what amendment should be adopted to carry out the expressed objectives it would be wholly unreasonable to require that the notice necessarily set forth all possible amendments that might be considered and adopted.

L & G urges that State v. Blue Diamond Oil Corporation, Tex.Civ.App., 76 S.W.2d 852, no writ history, is particularly apposite here. To the contrary we believe it to be clearly distinguishable. The notice of the hearing in that case spoke of the prevention of physical waste in the production of crude oil and the protection of the rights of the crude oil producers. The court held that the notice was insufficient to apprise interested parties that as a result of the hearing the Commission would adopt rules and regulations affecting those dealing with refined products *obtained* from *crude oil*. In the case here the notice apprised all concerned that the hearing was called for the purpose of considering how Statewide Rule 54 might be changed so that bottom hole locations of oil and gas wells would be more accurately known to the Commission.

■ L & G next contends that Rule 54 as amended is invalid because it does not provide for notice or hearing before the Commission authorizes a directional survey in accordance with the amendment (§ V). We overrule this contention. The order here under attack does not authorize the Commission or anyone else to take charge of plaintiff's property. Matters of title and possession are not involved. It is no more and no less than an inspection to determine the bottom of L & G's well, and according to the testimony the only way that can be ascertained accurately is by a directional survey.

We do not agree that the Commission in this case has dispensed with the notice requirement of 6036a and 6038. The former article reads: "No rule, regulation or order shall be adopted by the Commission under the provisions of this Act or of Title 102 of the Revised Civil Statutes of Texas, 1925, as amended, dealing with the conservation of oil and gas and the prevention of the waste thereof, except after hearing upon at least ten (10) days notice given in the manner and form prescribed by the Commission; * * *."

The latter article provides: "No order establishing or prescribing rates, rules and regulations shall be made except after hearing and at least ten days and not more than thirty days notice to the person, firm, cor-

poration, partnership, joint stock association, or association, owning or controlling and operating the pipe line or pipe lines affected." In our opinion neither of these statutes have to do with the action of the Commission here taken under § V of Rule 54.

■ The Legislature has delegated to the Commission the power not only to enforce the statutory mandate for the conservation of oil and gas, but also the power to make rules and orders necessary to carry into effective operation the legislative purposes. Rules and orders of the Railroad Commission made under authority of a statute are considered under the same principles as if they were the acts of the Legislature for the reason that the power was delegated to the Commission by the Legislature and in that sense the Commission is the agency of the Legislature. Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424.

■ Here the Commission, by authorizing the directional survey, is seeking to determine whether the rules, regulations, or orders of the Commission heretofore lawfully promulgated are being violated. This duty is imposed upon the Commission by Art. 6049c, § 5. It is not a proceeding to penalize L & G for the violation of any rule, regulation or order of the Commission or for the violation of any statute. Such a proceeding must be brought by the Attorney General or by the proper county or district attorney. Art. 6036.

The United States Supreme Court was faced with a similar question in Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088. The Court there held that § 304(a) of the Federal Food, Drug, and Cosmetic Act, which permitted multiple seizures of misbranded articles *"when the Administrator has probable cause to believe from facts found, without hearing,* * * * *that the mis-branded article is dangerous to health, or that the labeling of the misbranded article is fraudulent, or would be in a material respect misleading to the injury or damage* of the purchaser or consumer," was not unconstitutional under the Due Process Clause of the Fifth Amendment to the United States Constitution. The Court spoke as follows:

"It is said that these multiple seizure decisions of the Administrator can cause irreparable damage to a business. And so they can. The impact of the initiation of judicial proceedings is often serious. * * * The harm to property and business can also be incalculable by the mere institution of proceedings. Yet it has never been held that the hand of government must be stayed until the courts have an opportunity to determine whether the government is justified in instituting suit in the courts. Discretion of any official may be abused. Yet it is not a requirement of due process that there be judicial inquiry before discretion can be exercised. * * *"

We also notice the decision in Humble Oil & Refining Company v. L & G Oil Company, Tex.Civ.App., 259 S.W.2d 933, wr. ref. n. r. e., where action of the Commission was invoked under Rule 54. In that case the Court of Civil Appeals held that notice was not necessary to the owner of the mineral estate under a 1-acre tract where the Railroad Commission, under certain conditions as provided in Rule 54 granted a permit to the owner of the surface estate of that 1-acre tract to drill on that tract and directionally deviate the well from its normal course so as to reach the productive horizon embraced within the adjoining mineral estate that belonged to the owner of the surface of the 1-acre tract. Rule 54 provided that the Commission would grant a permit or directional deviation where conditions on the surface prevent or unduly complicate the drilling at a regular location and by necessary implication provided that notice and hearing would not be required in such a situation. As pointed out in the concurring opinion in that case the character of authority exercised by the Commission under its Rule 54 is to see that, the well

lawfully authorized, is drilled in accordance with its rules and regulations. That same authority is attempted to be exercised here by the Commission, under the provisions of the same rule as amended.

Just why L & G so vigorously resists the running of this directional survey is not clear. Even the possible unrecouped damage spoken of in Ewing v. Mytinger & Casselberry, Inc. is not possible here. Every protection has been afforded to this appellant. It is chargeable with none of the expense. A bond of $25,000 has been posted to secure it against any loss or damage to the well and according to the testimony any damage is a remote possibility. In addition to that Tidewater has assumed responsibility for any damage to L & G's property without limitation. L & G could look to no such protection had the Commission elected to run the survey with its own employees. L & G does not object on the ground that the survey will reveal to the "prying eyes" of competitors any private information. Since the survey is to be run through the casing, it can disclose only the location of the bottom of the well. There will be no "killing" of the well as asserted; there will be no loss of production; there will be no expense to L & G; there will be no damage without full indemnity. Actually the complaints boil down solely to that of a technical trespass and entry on L & G's leasehold. What they are saying is that the Commission has no right to direct Sperry-Sun Well Surveying Company to enter upon its property and run this survey either with or without notice and hearing.

■ Continually throughout its brief L & G charges that the effect of this order is to authorize Tidewater to trespass upon this property and physically seize its well which in effect it says amounts to a limited receivership.

Literally construed the order as drawn might be subject to that implication. It is improperly worded in that it speaks of authorizing Tidewater to make the directional survey through the use of an approved surveying company and does not follow the procedure authorized in the amendment to Rule 54. Tidewater did not ask that it be empowered to conduct the survey, but on the other hand sought that the Railroad Commission run or have run the survey in accordance with the amending section and expressly agreed to assume all the financial liability thereby imposed. It requested the Commission, if unable to make the survey with its own personnel and equipment, to approve the nomination of Sperry-Sun Well Surveying Company to run the survey, which company was on the Commission's approved list. While we assume that the Commission intended to issue its order in conformity with § V of Rule 54, nevertheless we hold that the order, which in so many words authorizes Tidewater to make the survey, is invalid and of no force and effect. For that reason only, we must reverse the judgment of the trial court.

We do further hold, however, that an order drawn in conformity to Rule 54 as amended and in compliance with Tidewater's request, which conformed to the rule, would be valid and within the authority of the Railroad Commission under the powers granted to it by the Legislature. There would thus be afforded no basis for any foreboding that possession of appellant's property would be delivered over into the hands of Tidewater even momentarily. That company, so far as the running of the survey is concerned, would merely occupy the position of a bystander.

■ L & G relies on Francisco v. Board of Dental Examiners, Tex.Civ.App., 149 S. W.2d 619, wr. ref., for the proposition that vested property rights may not be destroyed by an ex parte administrative order. That case is not in point here. No vested property rights are involved. In Francisco the Court held that the statute providing for revocation of the license of a dentist on proof of conviction of the dentist for felony involving moral turpitude, which does not

provide for notice, hearing or review of the order, is unconstitutional as denying due process of law. Before the Board could properly act it must determine a number of questions such as the identity of the licensee, the sufficiency of the record to show a final conviction, whether the crime of which the licensee is convicted is properly classified as of the grade of felony and whether it involves moral turpitude. We again emphasize that L & G is charged with no offense and the survey is not assessed as a penalty. Nor does the Commission seek to transfer or destroy any property rights. The order as properly written would authorize no one to take charge of L & G's property except for the limited purpose of running the survey and the authority for that purpose would not be granted to Tidewater but to Sperry-Sun, an independent organization which is to perform this service under the direction and for the benefit of the Commission. In this employment it will be acting for and on behalf of the Commission and in the capacity of its agent.

■ Finally, in its last point, again on the predicate that Tidewater is authorized physically to take charge of and "kill" the well and conduct a directional survey, L & G charges that the order is invalid because it illegally and arbitrarily provides that any interference by L & G "under the physical seizure by the third party, Tidewater, of appellant's well" would result in the severance by the Commission of the pipe line connection from the entire lease. For several reasons this point is untenable. In the first place it is wholly predicated on an incorrect statement. In the second place, if that portion of the order is arbitrary and illegal L & G has the right, if it should interfere and prevent the running of the directional survey, to resort to the courts for relief. This portion of the order, even conceding that the Commission has not the authority to impose that penalty, in no way affects the validity of the remainder of the order.

■ While L & G does not invoke the provisions of Art. 6049c, § 18, this statute has been called to our attention. The section reads:

"All persons entrusted with the enforcement of the orders, rules, and regulations of the Commission shall be regular employees of the State of Texas and paid by the State of Texas, and no other persons other than the regular employees of the State of Texas shall be charged with or relied upon for the performance of any such duties."

We believe that this section has no application to the situation before us. The matter here does not involve the enforcement of any orders, rules, and regulations of the Commission. Sperry-Sun, as agent of the Commission, is not empowered to take any enforcement steps. It is merely authorized to make this survey under the Commission's supervision. The survey is being made for the purpose of determining whether any rules or regulations or orders of the Commission are being violated. It is merely a preliminary step. Any enforcement of rules and regulations is a matter to be considered later. Section 5 of the same article provides that the Commission is not only empowered to but has the duty to inquire into whether the laws of Texas or the rules and regulations of the Commission are being violated and to require the oil properties to be inspected by the agents of the Commission as often and for such periods as the Commission may deem necessary.

To sum up therefore we hold that the notice given by the Railroad Commission was sufficient to authorize the adoption of the amendatory § V and that Rule 54 as amended is not invalid because notice and hearing are not required before action is taken under and in conformity therewith. We further hold that the order herein under consideration is improperly worded and therefore invalid in that it authorizes Tidewater to make the survey through the use of a surveying company.

We therefore must reverse the judgment of the trial court in its denial of the injunc-

tion prayed for by L & G and remand the cause to that court for the entry of a judgment in conformity with the views herein expressed.

GRIFFIN, Justice (concurring).

I concur with the holding of the majority that the order of the Commission entered December 4, 1962, authorizing Tidewater to enter on L & G's lease and conduct an inclination survey by using Sperry-Sun Surveying Company, is an invalid order and its enforcement must be enjoined.

I also concur with the majority holding that the notice given by the Commission was sufficient to authorize the Commission to promulgate Sec. V of Rule 54 on November 2, 1962. This is wholly without regard to the legality of all the provisions of Section V.

It is difficult to know just exactly what the opinion holds regarding the powers of the Commission under Sec. V.

It seems to me that Sec. V only authorizes the Commission to empower the complaining party to make such survey using approved well surveying companies. In addition the complaining third party must pay all costs of such survey, and enter into a bond to be approved by the Commission as security against all costs and risks associated with the survey.

This authorized survey is not to be made under the direction and control of the Commission, but apparently under the direction and control of the complaining third party.

Sec. V makes no provision that the information obtained as a result of that survey be made available to the Commission. Since the third party making the survey is to bear all expenses for making the survey, and give bond as security against all costs and risks associated with the survey, I can only assume that the third party will obtain the information resulting from the survey and do with such information whatsoever it pleases, and can even deny the Commis-

sion access to such information. There is nothing in Sec. V to prevent such action.

The provision that the survey shall be witnessed by the Commission "and may be witnessed by any party, or his agent, who has an interest in the field," merely requires the presence of these witnesses at the time and place of running the survey. If Sec. V be construed as only authorizing the Commission or its agents to make the survey, why the necessity of the provision that the survey may be witnessed by Commission personnel? Since when has it become necessary for authority for the Commission personnel to witness its own acts? Also, why the necessity of the last paragraph of Sec. V to reserve to the Commission the right to make surveys and inspections?

And this gets down to my other objection to Sec. V; which is that it contains no requirement that the operator who owns the lease and on which lease the well to be surveyed is located, shall have prior notice and be afforded an opportunity to present his side of this picture, prior to the actual surveying of his well.

That the appellant has a property right in his lease and in the Alexander No. 2 and a right to prevent the entry on his lease of third parties without his consent is fundamental. Womack v. Womack (1943), 141 Tex. 299, 172 S.W.2d 307; Spann v. City of Dallas (1921), 111 Tex. 350, 235 S.W. 513 (1).

The majority seeks to uphold the failure of the Commission to give notice to, and provide a hearing for, L & G by citing the case of Ewing v. Mytinger & Casselberry, 399 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088.

The majority failed to quote the court's language whereby it sustained the action of the Drug Administrator. That language is as follows:

"When the libels are filed the owner has an opportunity to appear as a claimant and to have a full hearing before the court. *This hearing, we conclude,*

*satisfies the requirements of due process.*

"At times a preliminary decision by an agency is a step in an administrative proceeding. We have repeatedly held that no hearing at the preliminary stage is required by due process *so long as the requisite hearing is held before the final administrative order becomes effective.* See Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694; Inland Empire [Dist.] Council v. Millis, 325 U.S. 697, 65 S.Ct. 1316, 89 L.Ed. 1877; Opp Cotton Mills v. Administrator of Wage & Hour Division of Dept. of Labor, 312 U.S. 126, 61 S.Ct. 524, 85 L.Ed. 624."

This declaration of law is in accordance with the general holding that so long as a hearing is provided for before the owner's rights are forfeited, the requirement of due process is fulfilled. 12 Tex.Jur.2d p. 449, Sec. 100; 12 Am.Jur. p. 307, Sec. 612.

To the same effect see Trapp v. Shell Oil Co. (1946), 145 Tex. 323, 198 S.W.2d 424 (17); Glenn Oaks Utilities, Inc. v. City of Houston (1950), 161 Tex. 417, 340 S.W.2d 783(1); United States v. McCrillis (1952) (1st Cir.), 200 F.2d 884(4); Magnolia Petroleum Co. v. Carter Oil Co. (1955) (10th Cir.), 218 F.2d 1(4, 5); Cantu v. Parr (Tex.Civ.App.1960), 338 S.W.2d 182(2), dismissed w. o. j. 161 Tex. 296, 340 S.W.2d 481; 1 Tex.Jur.2d 666, Sec. 24; 12 Tex.Jur. 2d 445, Sec. 98, 12 Tex.Jur.2d Sec. 100, p. 449, 12 Am.Jur. Sec. 612, p. 307.

The majority, without citation of any authority, say that the provisions of Art. 6036a, Vernon's Texas Civil Statutes, do not apply so as to require notice. To me, this holding is in the face of the very plain words used in 6036a, which do require notice, except in an emergency. There is no claim of an emergency in our case. The Commission did not cut off this well from the pipeline, and as far as this record shows it is being permitted to produce and its product is being legally marketed at the present time.

The majority opinion states: "The order here under attack does not authorize the Commission or anyone else to take charge of plaintiff's property"! Pray tell me how the survey is to be made by anyone other than L & G without taking charge of the lease, the well and the equipment therein, pulling all the equipment from the well, injecting a substance to equalize the pressure in the well. The testimony in the record is uncontradicted that all the above things are necessary in order to run the directional survey.

It is well-settled law that "Rules and regulations of the Railroad Commission cannot effect a change or transfer of property rights." Nale v. Carroll (1956), 155 Tex. 555, 289 S.W.2d 743, 745; Marrs v. Railroad Commission (1944) 142 Tex. 293, 177 S.W. 2d 941(8, 9); Magnolia Petroleum Co. v. Railroad Commission (1943), 141 Tex. 96, 170 S.W.2d 189, 191; Gregg v. Delhi-Taylor Oil Corp. (1961), 162 Tex. 38, 344 S.W.2d 411(2, 3); Novak v. Bruner (Tex.Civ.App. 1959), 320 S.W.2d 439, writ refused.

In the concurring opinion in the case of Humble Oil & Refining Co. v. L & G Oil Co. (Tex.Civ.App.1953), 259 S.W.2d 933, writ refused, n. r. e., it is said: "Regardless of the character of notice and regardless of the extent of hearing had the Commission could not grant authority for one person to trespass on the property of another."

In view of the wording of Sec. V, I cannot construe it in any other manner than that it was intended only for the purpose of setting up a procedure whereby a third person may be authorized to carry out the duties imposed on the Commission by the Legislature.

Sec. V was not needed to give the Commission power to inspect the well or to determine the bottom hole location.

All parties agree the Commission has had this power for many years. Art. 6049c confers this power by the use of the following language: "* * * to require *any well, lease* * * * belonging to or under the control of any such person (developers,

producers, and sellers of petroleum products) *to be inspected* or gauged *by the agents of the Commission* whenever and as often and for such periods as the Commission may deem necessary; and *the Commission and its agents* and *the Attorney General and his assistants and representatives* may likewise examine the books and records." This Article first became law in 1932.

The majority also says that Art. 6049c, Sec. 18, requiring that only regular employees of the State of Texas and paid by the State of Texas, shall be entrusted with the enforcement of the orders, rules and regulations of the Commission.

I maintain that a reading of Title 102 shows that the Legislature clearly intended that in the enforcement of our conservation laws as to oil and gas, only employees of the State and paid by the State should be used. By Art. 6032 the Legislature has provided a tax to be known as the Oil and Gas Enforcement Fund, and has also expressly provided, "The funds derived from this tax shall, so far as hereinafter provided, be used for the administration of the conservation laws of this State relating to oil and gas." While it cannot affect the present case, I have just been handed a copy of H. B. 476, of the current session of the 58th Legislature. I am reliably informed by the Legislature employees that this bill has been passed by both houses and sent to the Governor for signature.

The effect of this bill as stated in the caption prohibits the Attorney General from accepting money from third parties for the purpose of investigating or prosecuting any matter whatsoever. If signed by the Governor, this will close down the Trust Fund heretofore used by the Attorney General in paying for surveys of East Texas wells heretofore made by the Commission.

It also shows that the Legislature does not approve of the provisions of Section V, permitting third parties to pay for surveys of other's wells, when demanded by such third parties. The Railroad Commission was not created to further the interests of third parties, but of the public. To permit third parties to have the Commission carry out discovery to benefit the third parties, by paying the expenses of such discovery, is contrary to our public policy and to the laws found in Title 102, creating and empowering the Commission to act only for public good.

I cannot construe Sec. V of Statewide Rule 54, as amended, as providing only for the Commission to make inclination or directional surveys of wells, for the following reasons

1. The majority opinion states that Art. 6049c gives this power to the Commission.

2. The language of Sec. V. clearly shows it is for the purpose of empowering others than the Commission to make the surveys.

3. It specifically reserves to the Commission the right, acting on its authority to conduct spot checks and surveys at any time and place for determining compliance with its rules and regulations. Why reserve this right if Sec. V is only to confer on the Commission the right to do those very things?

4. It authorizes the Commission personnel to witness the survey. What is the necessity of authorizing the Commission personnel to witness its own acts?

5. As construed by the majority, the Commission did a vain and useless thing, and Sec. V does not confer any new power on the Commission.

6. The Commission had the power to require L & G to make a directional survey, under penalty of severing the pipeline connection should L & G not furnish a satisfactory survey.

The proper place for individuals and corporations to obtain information by discovery procedure is in the courthouse where, for over hundreds of years, proper safeguards have been developed for the protection of all parties. The information here sought

by Tidewater was available to it under judicial procedure. Hastings Oil Co. v. Texas Co., 149 Tex. 416, 234 S.W.2d 389 (1950).

It is a sad day when the courts of this State surrender to boards and bureaus the power to conduct discovery procedures. And to allow a citizen or corporation, a potential foe in litigation, to go upon and take charge of another's property without even so much as notice and an opportunity to be heard, is a clear violation of the due process clause of the Texas and Federal Constitutions.

For all of the above reasons, I would hold Sec. V invalid. This would reach the same result as the majority, but on entirely different reasons.

GREENHILL, J., joins in this opinion.